(116 So. 843)

No. 28897.

## CAPITAL BUILDING & LOAN ASS'N v. NORTHERN INS. CO. OF NEW YORK.

April 9, 1928.   Rehearing Denied May 7, 1928.

John C. Hollingsworth, of New Orleans, for appellant.

Hawthorn & Stafford, of Alexandria, and Taylor, Porter, Loret & Brooks, of Baton Rouge, for appellee.

THOMPSON, J.   This is a suit by a mortgage creditor of the insured to recover the face value of a fire insurance policy amounting to $2,400, together with the statutory penalty of 12 per cent. and $500 attorney fees.

The defense is that the policy was void at and before the fire which destroyed the in-

sured property, both as to the insured and the mortgage creditor—as to the insured because he was not the unconditional owner of the property at the time of the fire, and as to the creditor because it had failed to notify the insurance company of the change of ownership as it was required to do under the standard mortgage clause of the policy.

There is no controversy as to the facts.

The indebtedness of the insured to the plaintiff is not disputed. The validity of the mortgage on the insured property is not questioned. The property was destroyed by fire, and the policy carried the New York standard full contribution mortgage clause running in favor of the plaintiff, wherein it is provided that the loss or damage under the policy should be payable to the mortgage creditor as its interest may appear.

The fire which destroyed the property occurred on September 17, 1926.

Some 13 days prior thereto, the property, under a foreclosure proceeding instituted by the plaintiff, had been adjudicated by the sheriff to the Dougherty Land Company, Inc. The purchaser did not comply with its bid by paying the price to the sheriff; hence no deed transferring the property was executed by the sheriff.

The legal question presented from these facts is whether the adjudication in the foreclosure proceeding had the effect in law of divesting the title of the insured and investing it in the adjudicatee.

▇ The policy contained the stipulation that the entire policy shall be void (as against the insured) if the interest of the insured be other than unconditional and sole ownership; or if, with the knowledge of the insured, foreclosure proceedings be commenced, or notice given of sale of the property covered by the insurance; or if any change, other than the death of the insured, take place in the interest, title, or possession of the subject of insurance, whether by legal process or judg-

ment, or by voluntary act of the insured, or otherwise.

Under these provisions, it can hardly be denied that as against the insured the policy became null and void, when the adjudication was made by the sheriff in the foreclosure proceeding.

▇ But was this true with respect to the mortgage creditor under the loss payable clause? That clause reads:

"Loss or damage, if any, under this policy shall be payable to the Capital Building & Loan Association as mortgagee as interest may appear, and this insurance, as to the interest of the mortgagee only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee shall on demand pay the same.

"Provided, also that the mortgagee shall notify this Company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee, and unless permitted by this policy, it shall be noted thereon, and the mortgagee shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void."

The above quoted language is, it seems to us, plain and unambiguous, in the original text as well as in the proviso. No positive act, of commission, nor any passive act of neglect or omission on the part of the insured or owner, and no foreclosure or other proceeding, and no notice of sale, and no change in the title or ownership of the property, shall invalidate the policy with respect to the interest therein of the mortgage creditor. The only obligation or duty imposed upon the mortgage creditor was to give to the insurance company notice of the change of ownership of the property or increase of the hazard, and thereafter to pay the premium on demand of the company.

There is nothing in this clause requiring the mortgage creditor to notify the insurance company of the institution of foreclosure proceedings, nor of the fact of adjudication of the property covered by the insurance, unless such adjudication under the law operated a change of ownership or a translation of title from the insured to the adjudicatee.

If it be held that the adjudication of itself amounts to a sale or change of ownership, where the adjudicatee fails to comply with his bid, and the sheriff, for that reason, fails to execute the deed confirming the adjudication, then, under the proviso quoted supra, the policy became void as to the interest and rights of the mortgagee, since it is conceded that no notice of the foreclosure proceedings and adjudication was given to the insurance company, and since the mortgage creditor had knowledge of such proceedings and adjudication, having itself instituted such proceedings.

The counsel for the insurance company, in support of his contention that the adjudication amounted to a perfect and complete sale, cites article 2439 of the Civil Code, which provides that a sale is perfect when three circumstances concur, to wit, the thing sold, the price, and the consent. And article 2456, which declares that the sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser, with regard to the seller, as soon as there exists an agreement for the subject, and for the price thereof, although the object has not yet been delivered, nor the price paid.

If counsel's construction of the two articles were adopted, then all that would be necessary to avoid a fire policy, on account of a change of ownership, would be simply to prove that the insured had agreed to sell his property to another, and at a fixed price which the proposed purchaser had agreed to accept.

And the forfeiture would likewise be visited on the mortgagee, if it had been informed of the agreement of sale and had failed to notify the insurance company thereof.

Such is not the meaning of the articles of the Code, and such is not the interpretation placed upon said articles by the decisions of this court.

Article 2440 of the Code declares that all sales of immovables shall be made by authentic act or under private signature, and every verbal sale of immovables shall be null, as well for third persons, as for the contracting parties themselves, and the testimonial proof of it shall not be admitted.

The articles referred to must be construed with article 2462. That article qualifies the language used in articles 2439 and 2456, and clearly defines the meaning of such articles. It is therein declared that where the thing, the price, and the reciprocal consent exists, if it relates to immovables and is in writing, it amounts to a sale, in so far as to give either party the right to enforce specific performance of same.

It will not do, therefore, to say that the mere concurrence of the thing, the price, and the consent creates a perfect and executed contract of sale such as to transfer the ownership of the property from the seller to the buyer.

Nor will it do to say in a judicial sale that the mere adjudication by the sheriff operates a transfer of the property from the seized debtor to the adjudicatee at such sale.

Like the promise of sale, the adjudication is a sale in the sense that it gives the right to either the adjudicatee or the seizing creditor to compel compliance with the terms of adjudication.

The question here presented has been up frequently for consideration, and this court has invariably held that where the purchaser for cash refuses to comply with the terms of

sale by paying the price, he is considered as never having been owner.

In Washburn v. Green, 13 La. Ann. 332, the argument was made that the adjudication gave the purchasers a good title; that if they did not comply with the sale, the curator could either obtain a dissolution or have the property sold at the risk of the purchaser. The court answered the contention by saying that:

"It is true that article 2586 [2608] C. C., declares that the adjudication is the completion of the sale. But it was never the intention of the lawgiver to say that this consequence should follow, and the sale should be complete where the purchaser had refused to comply with the terms of the sale on demand, and had been decreed by the judgment of a competent tribunal to be in default.

"Otherwise this would happen; the title would vest in the vendee and would become subject to all legal and judicial mortgages operating upon his property, and the resale would transfer the title of such vendee so encumbered direct to the new purchaser who would not acquire from the succession."

The court characterized the contention as absurd.

Further quoting, the court said:

"That the title to the property by the act of adjudication does not pass where there is a refusal to comply with the terms of the sale, clearly results from the following decisions, viz.: Municipality No. 2 v. Hennen, 14 La. 588, 590; Mercier v. Sterlin, 5 La. 472; Banks v. Hyde, 15 La. 391; Rowly v. Kemp, 2 La. Ann. 361."

In the case of Lapene v. Badeaux, 36 La. Ann. 194, the adjudication was made September 4, 1875, of succession property. The purchaser declined to comply with his bid, and considerable litigation followed, and it was not until March 27, 1883, that the purchaser was ordered to comply with his bid. He did so, and was sent into possession of the property. The purchaser then sued for a large amount as the value of the occupancy of the property for the period between the date of the adjudication and the date he complied with his bid. The suit was based upon the theory that the purchaser became the absolute owner of the property at the time of adjudication. The demand was rejected. The court, after quoting articles 2456, 2608, and 2609 of the Civil Code and the article of the Code of Practice to the effect that if the adjudicatee refuses to pay the price of adjudication to the sheriff, the latter shall expose the thing to sale anew and adjudge it to another person, said:

"It is apparent from the spirit and letter of those different texts of law, that it is the contract which is perfected by the agreement of competent parties as to the thing and price; but that title to the property is really transferred from vendor to vendee only when the terms of sale have been complied with. * * *

"The contract of sale does not make the buyer master and possessor, and does not give him a right to enjoy, to use and to dispose of the thing sold, but only a right to demand the delivery of it. This delivery of the thing, together with the payment of the price, consummates the sale and makes the buyer fully master and possessor of the thing, which was the end of the contract of sale."

In the case of Etta Contracting Co. v. Bruning, 134 La. 48, 53, 63 So. 619, 621, the court said:

"There is a line of cases whereby it may be regarded as settled (certainly, with regard to judicial sales) that, where the purchaser refuses to comply with the terms of the adjudication, he is considered as never having been the owner."

And in Nichols v. Bryan, 143 La. 291, 78 So. 562, the court said:

"Has there been a sale? We think not. When a judicial sale is for cash, and the adjudicatee refuses to comply with his bid, there is no sale."

In Gordon v. Insurance Co., 120 La. 441, 45 So. 384, 15 L. R. A. (N. S.) 827, 124 Am. St. Rep. 434, 14 Ann. Cas. 886, the insured had been adjudicated a bankrupt, and the day following such adjudication, his stock of goods was destroyed by fire. Two weeks later

a trustee in bankruptcy was appointed and qualified.

A composition with his creditors was effected by the bankrupt, and the insurance policy was given back to the bankrupt. In a suit on the policy, the company contended that the adjudication in bankruptcy avoided the policy, because the title was vested in the trustee under the provision of the bankruptcy law, which declares that the estate shall be vested in the trustee as of date he is adjudged a bankrupt. The court held:

"In the interval between the adjudication in bankruptcy and the appointment of the trustee the title of the property tendered remains in the bankrupt."

Corpus Juris, vol. 26, p. 240, states the rule as follows:

"A completed judicial sale transfers title and so amounts to an alienation, sale or change in title within a policy providing that such acts shall avoid it.

"But the condition against alienation or change of title is not violated until the sale is finally completed. If loss occurs before confirmation of the sale, or delivery of a deed or other instrument of conveyance, * * * a recovery on the policy is not barred."

It results from the authorities cited that our conclusion is that the adjudication at the judicial sale to the Dougherty Land Company, the price not having been paid, did not divest the title of Hudson, the insured, and that the insurable interest of the mortgagee was not affected by said adjudication. There being no sale of the property, the mortgagee was not required to give the company any notice of the foreclosure proceedings and of the adjudication.

In a supplemental brief, the defendant cites the case of Jones & Pickett, Limited, v. Michigan Fire & Marine Ins. Co., 132 La. 847, 61 So. 846, as supporting the contention that the policy was void as to the mortgagee. The case has not the remotest application to the present controversy. We have heretofore

said that the policy was void as to the insured because of the foreclosure proceeding, and if the insured was here claiming the insurance, the cited case would be decisive against his right of recovery.

To hold that the policy is void as against the mortgagee, on authority of the cited case, would be to strike from the policy the clause substituting such mortgage creditor for the insured in case of loss or damage.

■ The defendant company complains of the imposition of the 12 per cent. penalty and attorney fees upon the theory that Act 168 of 1908 imposes such penalty and attorney fees in favor of the insured, and not in favor of a mortgage creditor.

The answer is that the company agreed to substitute the plaintiff as payee of all loss or damage accruing under the policy as the plaintiff's interest may appear. Hence all of the rights which the insured would have been entitled to, with respect to the penalty and attorney fees, ran with the policy in favor of the plaintiff.

But beyond this, the statute, in express terms, declares that if the loss is not paid within the time fixed and under the conditions provided, the company shall be liable to pay the holder or holders of such policy, in addition to the amount of the loss, 12 per cent. damages on the total amount of the loss, together with reasonable attorney fees for the prosecution and collection of the loss.

■ The appellant asks, in the alternative, that it should not be required to pay the judgment unless the plaintiff executes a self-proving doctrine, coupled with the delivery of the original mortgage note, and also securities held by the appellee.

We are not cited to any law which would justify the court in granting the relief asked for, nor does the policy provide therefor. The stipulation of the policy is, that:

"Whenever this company shall pay the mortgagee any sum for loss or damage under this

policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option pay the mortgagee the whole principal due or to grow due, on the mortgage, with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee to recover the full amount of their claim."

It appears, therefore, that the defendant, on paying the plaintiff the full amount of its mortgage debt, will be entitled to an assignment of all of the rights of the plaintiff by virtue of its mortgage against the insured Hudson, together with the note secured by such mortgage.

Should the defendant, however, only pay the plaintiff the amount of the judgment herein rendered against said company, the said company shall, by virtue of said payment, be subrogated to all of the rights of the plaintiff under its mortgage as against the insured.

The right which the plaintiff may have had against the Dougherty Land Company, to force that company to accept title, is a statutory or legal right which was optional and personal to the plaintiff. Such a right was not created by the conventional mortgage, nor does it fall within the rights to which the defendant is entitled to subrogation under the terms of the stipulation hereinabove quoted.

For the reasons assigned, the judgment appealed from is amended as follows: It is ordered that upon payment to the plaintiff of the amount allowed by the judgment appealed from, the defendant company shall be subrogated to all the rights of the plaintiff under its mortgage against the insured, subject, however, to the right of the plaintiff to recover out of the mortgage property the full balance of its claim.

In the event the defendant shall pay the plaintiff the full amount of its mortgage debt, the defendant shall be entitled to receive a full assignment and transfer from the plaintiff of its mortgage and such other securities as may be held in connection therewith against the insured.

As thus amended, the judgment is affirmed, the costs to be paid by the defendant and appellant.