John Abraham, a resident of Natchitoches Parish, Louisiana, owned several pieces of improved real estate in the City of Alexandria, Louisiana, against which the Security Banking Company, a banking institution domiciled in the Parish of Rapides, Louisiana, held a mortgage in the sum of Seven Thousand ($7,000) Dollars. The bank effected for its own protection against loss from fire and tornado, insurance on the mortgaged properties by procuring policies from the plaintiff. It is alleged that plaintiff "was unwilling to insure the said property in the *Page 184 
name of the owner, John Abraham, but at the request of said bank it did issue unto and in favor of the bank, as mortgagee, its fire and tornado policy," which covered, among other properties included in the mortgage, that which was located at municipal number 1038 Lee Street, in said City of Alexandria.
While the said policy was in effect, and on August 6, 1938, the improvements at No. 1038 Lee Street were damaged by fire to the extent of $532.07, for which the bank made claim upon plaintiff under said policy and received from it payment of said amount.
At the time said payment was made, plaintiff received from said Security Banking Company an act of conventional subrogation wherein and whereby said bank "* * * assigned and transferred unto petitioner all of its right, title and interest in and to the mortgage notes and other indebtedness which it held against the said John Abraham, to the extent of said payment, which act of subrogation was duly placed of record in Mortgage Book 205, page 231, records of Rapides Parish, La. * * *."
The petition further sets forth:
"Petitioner shows that upon the execution of the said act of subrogation it was the duty of the defendant Security Banking Company to transfer and deliver to petitioner said mortgage notes and other evidences of debt against the said John Abraham, immediately upon payment of the debt of the said Abraham to the bank, in order that petitioner might bring action thereupon against the said Abraham in accordance with the rights transferred to petitioner under the act of subrogation.
"Petitioner shows that the Security Banking Company, in violation of its subrogation agreement, subsequently returned to the said John Abraham all of the said mortgage notes and other evidences of debt, and has refused to turn them over to petitioner upon demand, thereby preventing petitioner from foreclosing upon the said mortgage and recovering from the said Abraham the amount of its payment to the said Security Banking Company.
It is further alleged on information that the banking company, at the time said $532.07 was paid to it by plaintiff, inadvertently credited the amount to the account of defendant, Abraham, who really had no interest therein; that, therefore, when said securities were turned back to him by the bank he was still indebted unto the bank and "thus to petitioner under the said subrogation in the amount of $532.07."
It is additionally alleged that at the time the bank surrendered said mortgage notes, etc., to said Abraham, the property affected by said mortgage was well worth much more than the amount due petitioner under the subrogation; that the bank's action, as above set forth, caused plaintiff to lose security for payment of the debt due it, thereby relegating it to an ordinary action against said Abraham; that because of its action in violating its contract with petitioner, said bank is directly liable to petitioner for said sum of $532.07.
Alternatively, it is alleged that should petitioner be awarded judgment against the said Abraham, as prayed for, but is held not entitled to like judgment against the bank until such time as it is shown that judgment against said Abraham is uncollectible, in that event, plaintiff asks that its right to proceed subsequently against said bank be reserved to it.
This suit was filed in the District Court of Natchitoches Parish, Abraham's residence. Judgment in solido against the bank and Abraham is prayed for.
The petition was excepted to by Abraham as not disclosing either a cause or a right of action. The bank declined the court's jurisdiction ratione personae by appropriate plea. The exceptions and the plea were sustained and the suit dismissed, from which action plaintiff appealed to this court.
[1] For the purpose of adjudging the merits of the exceptions filed by Abraham, all well pleaded facts are taken and accepted as being correct. They are above narrated.
[2] We are quite sure the exceptions are not well founded. They should have been overruled.
The insurance involved herein was effected by the mortgagee, possibly without the request or knowledge of the owner. The insurer, according to the petition, was unwilling, for reasons not disclosed by the record, to insure the properties in the name of said owner. The contract of insurance *Page 185 
was exclusively between the mortgagee and the insurer. The owner was in no sense of the word a party thereto, nor had he any interest, present or remote, therein. The buildings on the mortgaged lands were doubtless more valuable than the land itself. Therefore, the mortgagee was vitally interested in the buildings and to protect the security the mortgage was designed to give, it was indispensable that insurance against loss from fire or tornado be placed on the buildings. This was not done to protect or subserve the rights of the owner.
The policy of insurance involved herein, or a copy of it, is not in the record. We assume it was of the New York standard form, and if so, it contained a stipulation that under circumstances as are present in this case, the mortgagee was obligated to and agreed to subrogate the insurer unto the mortgagee's security to the extent of any loss that should occur. See Capital Building Loan Association v. Northern Insurance Company of New York, 166 La. 179, 188, 189,116 So. 843. It was in keeping with this covenant that the subrogation upon which plaintiff relies was executed by the bank and delivered to the insurer, plaintiff herein.
[3] It is well settled that under facts and circumstances as exist in this case, a subrogation, such as we are dealing with, is perfectly legal and vests in the subrogee the same right to foreclose the mortgage as was vested in the original mortgagee, to the extent of the subrogee's interest. The whole matter is gauged and determined as between the mortgagee and the subrogee, the insurer, without any reference whatever to the owner or ownership of the property. This rule is clearly stated in Cooley's Briefs on Insurance, Volume 7, page 6718, as follows:
"It is a general rule that where the interest of a mortgagee is separately insured for his own benefit, and a loss occurs before payment of the mortgage, the underwriters are bound to pay the amount of such debt to the mortgagee, providing it does not exceed the insurance, and are thereupon entitled to an assignment of the debt from the mortgagee, and may recover the same from the mortgagor. The payment of the insurance by the underwriter does not, in such a case, discharge the mortgagor from the debt, but only changes the creditor."
Many cases from various jurisdictions are cited in support of the rule, including the early case of Carpenter v. Providence Washington Insurance Company, 16 Pet. 495, 10 L.Ed. 1044. There are a few cases holding to the contrary, but they constitute a very frail minority rule. The rule is much more tersely stated in 29 American Jurisprudence, 1010, § 1351, as follows:
"It is generally held that where a mortgagee insures the mortgaged property at his own expense and for his own benefit and a loss occurs, the insurer on paying the loss to the mortgagee is subrogated, to the extent of the amount thus paid, to the means of enforcing payment of the original obligation by the debtor, the claim not being extinguished until payment by him. * * *"
We have found only two cases in our own jurisprudence, the facts of which are quite similar to those in the case at bar. These are Capital Building Loan Association v. Northern Insurance Company of New York, cited above, and Federal Union Insurance Company v. Griffin, decided by this court, and reported in 151 So. 107. In this latter case the facts are these: A building and loan association held a mortgage against property of the defendant, Griffin. He and/or the association had the property insured by the Federal Union Insurance Company, the plaintiff, with loss payable to the building and loan association as its interest should appear. Griffin, in violation of the terms of the policy and without the insurer's consent, procured additional insurance on the property in a different company. His action rendered null and void the first policy insofar as his interest was concerned. The insured property was damaged by fire while both policies were in effect, and in a settlement and compromise of the issues that arose in connection with the loss, the Federal Union Insurance Company paid to the building and loan association One Thousand ($1,000) Dollars, and took from it a subrogation of its mortgage rights against Griffin, the owner. The insurance company thereafter instituted foreclosure proceedings under its mortgage subrogation. Its right to do so was upheld by the court a quo and by this court.
In principle it is difficult to perceive any difference between this case and that at bar. In that case the owner had an interest in the first policy second to the *Page 186 
mortgagee but lost it by his own voluntary act, while in the case before us at no time did he have any interest in the policy of insurance.
In the other case, decided by the Supreme Court, as reflected from the syllabi, it was held:
"Insurer on paying insured's mortgage creditor full amount of mortgage debt after loss will be entitled to assignment of all rights of such creditor by virtue of mortgage against insured, together with note secured by such mortgage.
"Insurer on paying insured's mortgage creditor amount of loss may by virtue of such payment be subrogated to all rights of such creditor under mortgage as against insured, subject to rights of creditor to recover out of mortgage property balance of claim."
[4] The lower court's ruling on the bank's plea to the jurisdiction, we think correct. To require the bank to defend the suit in the District Court of Natchitoches Parish it must first be found and held that it and Abraham in solido are bound unto the plaintiff for the amount involved herein. No such conclusion can rationally be reached from a consideration of the allegations of the petition. It is not alleged nor intimated that there was any concert of action or conspiracy between the bank and Abraham to defraud plaintiff, but, on the contrary, it is alleged that the bank inadvertently gave Abraham credit on his indebtedness for said amount. This only required a book entry or two. The good faith of neither defendant is questioned. The bank simply acted in error of plaintiff's rights in the respects mentioned and Abraham simply accepted the benefits that followed such erroneous action.
Under the allegations of the petition it is clear that the bank has not profited to any extent from its erroneous action that forms the basis of this suit. Abraham is the person to whom the money was erroneously paid. He is the one primarily liable therefor to plaintiff. The bank's liability is secondary. If collection cannot be made from Abraham then plaintiff may proceed to assert its rights judicially against the bank.
For the reasons herein assigned, the judgment appealed from, insofar as it sustains the plea to the jurisdiction filed by the Security Banking Company, is affirmed; but in all other respects the judgment, for said reasons, is annulled, avoided and reversed, and this case is now remanded to the court a quo for further proceedings. Costs of appeal are assessed equally against plaintiff and defendant, Abraham.