131 So.2d 838 (1961)
THE FORGE, INC., Plaintiff-Appellee,
v.
PEERLESS CASUALTY COMPANY et al., Defendants-Appellants.
No. 9523.
Court of Appeal of Louisiana, Second Circuit.
June 1, 1961.
Rehearing Denied June 22, 1961.
*839 Theus, Grisham, Davis, Leigh & Brown, Monroe, for appellants.
Oliver, Digby & Fudickar, Monroe, for Sam C. Brown.
Davenport, Farr & Kelly, Monroe, for Edmond G. Merhige, intervenor-appellee.
Before GLADNEY, AYRES and BOLIN, JJ.
BOLIN, Judge.
This is a suit for recovery under two fire insurance policies issued to plaintiff by defendants covering a certain building in Monroe, Louisiana, known as "The Forge". The facts giving rise to this litigation are not in serious dispute.
L. A. West was the owner of certain vacant property situated in Monroe adjacent to the Forsythe Shopping Center. On July 20, 1954, West entered into two lease agreements with Sam Brown and E. G. Merhige covering this vacant property. The two leases were identical except for a difference in the stipulated rental and the dates covered. The first lease extended for a five year period from September 1, 1954 through August 31, 1959. The second lease was for the next ensuing five year period from September 1, 1959 through August 31, 1964, with slight increases in the monthly rent payments.
In due course, the named lessees, Sam Brown and Edmond G. Merhige, constructed a building upon the premises at their expense for the operation of a restaurant known as "The Forge". Thereafter, the named lessees organized a private corporation, The Forge, Inc., and transferred all their interest in the restaurant business and the above leases to this corporation in exchange for stock.
Each of the leases under which The Forge, Inc., occupied the premises in question contained the following provision:
"Upon expiration of this lease, all buildings that have been constructed by lessee on lease (sic) property will become the property of lessor."
On October 8, 1958, a fire of unknown origin occurred in the building, causing damage, the extent of which is one of the points of contention in this suit.
With The Forge, Inc., as the named insured, the building in question was protected against loss or damage by fire under the following policies:
(a) Policy No. 17-10439 of Peerless Casualty Company in the amount of $6,000:
*840 (b) Policy No. 343728 of the Millers Mutual Fire Insurance Company of Texas in the amount of $20,000. Both such contracts of insurance were written in the standard form for Louisiana fire policies and were in full force and effect on October 8, 1958, the date of the fire.
Proofs of loss were timely filed by The Forge, Inc., with the named insurance companies, claiming the total coverage under the policies for a total loss of the building. The insurers denied responsibility for the full amount of the policies, but legally tendered to plaintiff a sum which they contended was the correct amount under the lease and insurance policies in question. Defendants affirmatively alleged in their answer that the building was not a total loss, but to the contrary could be repaired for the sum of $16,840.72; that the plaintiff did not have a 100% insurable interest in the building; that he only had a right to use the building for an additional seventy-one months and, therefore, his insurable interest was 71/120. Defendant accordingly tendered 71/120 or 59% of $16,840.72 as payment under the policies. This offer of payment was declined by the insured, and this suit was instituted seeking recovery of the face value of the polices, together with penalties and attorney's fees for the alleged arbitrary refusal to pay the full amount of coverage. The lower court rendered judgment for plaintiffs as prayed for, from which the defendants have appealed.
Prior to the fire, Merhige transferred his interest in "The Forge" to Brown. In order to protect his rights in a companion suit by West against Brown and Merhige for rent under the lease contracts, Merhige intervened in this suit for recognition of his right against Brown and The Forge should judgment be rendered in favor of West in the rent suit. The lower court recognized this right of indemnity and this portion of the judgment has not been questioned by the other parties herein concerned.
The first complaint of appellants with the judgment below is the refusal of the trial court to allow an inquiry into the amount of insurable interest of the insured. The trial judge ruled that, as the insurer did not elect to repair or replace the premises within the time specified by the policy contract, the insurer would be liable for the full face value of the policy regardless of the insurable interest of the insured. The policy provision upon which this conclusion was reached is set forth in LSA-R. S. 22:691 as a portion of the Standard Fire Policy as follows:
"Company's OptionsIt shall be optional with the company to take all or any part of the property at the agreed or appraised value and also to repair, rebuild or replace the property destroyed or damaged with other of like kind and quality within a reasonable time on giving notice of its intention to do so within thirty days after the receipt of the proof of loss herein required."
While we agree with the conclusion reached in the court below, we do not agree with the reasons given therefor. We feel the policy provisions merely permits the insurer to repair in lieu of payment; a failure to repair requires payment, but only to the extent of the damage or the interest of the insured.
In our opinion, this decision depends upon the proper interpretation of LSA-R.S. 22:-695, which is commonly referred to as "The Louisiana Valued Policy Law". Most jurisdictions do not have such a law, but construe fire insurance contracts as "open policies". The effect of the valued policy law is generally to recognize the right of the insurer to limit its liability to the face of the policy and also to recognize the right of the insured to fix his right of recovery to a definite sum in case of total loss; the insurer knows that its liability cannot be above the face of the policy, and the insured knows that his recovery will not be below the face of the policy.
In our opinion, this issue is determinable by answering the question: Does *841 the Louisiana Valued Policy law, LSA-R.S. 22:695, preclude the insurer from questioning the extent of the interest of the insured, and require the payment to such insured the full face value of the policy in the event of a total loss, when the interest of the insured is less than full ownership?
Appellants contend this is answered favorably to them by the case of Lighting Fixture Supply Co. v. Pacific Fire Ins. Co. of New York, 1932, 176 La. 499, 146 So. 35, wherein the court allowed the insurer to inquire into the extent of the insurable interest and prorated the liability of the insurer on a fire insurance policy covering certain improvements.
The facts in that case were recited by the Court to be:
"The plaintiff, as lessee, made certain alterations to the leased premises under an agreement that at the termination of the lease these improvements should, without compensation, become the property of the lessor. Plaintiff insured the improvements for $2,000 with the defendant company. Shortly before the expiration of the lease, the entire building, including plaintiff's improvements, was destroyed by fire. Plaintiff then sued the insurer for the amount of the policy, with penalties, interest, and attorney's fees, grounding its action on the state's valued policy law, Act No. 135 of 1900.
"The defendant denied the application of the statutory law pleaded, and averred that plaintiff's insurable interest in the improvements covered by its policy was $187.12, the value of their use for the unexpired term of the lease."
After a thorough analysis of the question, the court held the improvements to be immovables under LSA-C.C. art. 464 as the improvements became a part of the building leased and the lease contract provided that the improvements would become the property of the lessor. After so holding, the court said:
"Our conclusion is that, according' to the plain declaration of article 464 of the Civil Code, the alterations and improvements made by the lessee to the leased premises were immovables. But it by no means follows from this conclusion that the contract by which they were insured is governed by the valued policy law.
"There is nothing in the valued policy law which prohibits the insurer from contesting the extent of the insurable interest of the insured in the immovable described in the policy. The statute presumes that the insured is the owner of the property insured, and merely prescribes a rule of public policy for establishing the pecuniary loss suffered by its partial or total destruction by fire."
However, while we do not hold the case indistinguishable on the facts, we believe the cited case to be without authority in this controversy before us. This is true, so we believe, due to legislative action in amending the statute in question subsequent to the decision discussed above. At that time, the Valued Policy Law provided:
"Section 1. Whenever any policy of insurance against loss by fire is hereafter written or renewed, on property immovable by nature and situated in this state, and the said property shall be either partially damaged or totally destroyed, without criminal fault on the part of the insured or his assigns, the value of the property as assessed by the insurer or as by him permitted to be assessed at the time of the issuance of the policy, shall be conclusively taken to be the true value of the property at the time of the issuance of the policy and the true value of the property at the time of damage or destruction. Provided, that nothing herein shall be so construed as to prevent the insurer previous to the damage or destruction of property from reducing the insurance thereon.

*842 "Section 2. Whenever any policy of insurance against loss by fire, is hereafter written or renewed on property situated in this state, and the said property shall be totally destroyed without criminal fault upon the part of the insured or his assigns, the full amount of the insurance on the property so destroyed shall be paid by the insurer, and when the said property shall be partially damaged, without criminal fault on the part of the insured or his assigns, the insurer shall pay to the insured such amount as will permit the insured to restore the damaged property to its original condition. Provided, that nothing herein shall be so construed as to prevent the insurer from replacing property partially damaged or totally destroyed at his own expense and without contribution on the part of the insured." (Emphasis ours.)
This was changed in 1952 with the adoption of LSA-R.S. 22:695, the pertinent portions of which provides:
A. "Under any fire insurance policy, which may be written hereafter, and which is intended to take effect, at or after 12 o'clock noon, Central Standard Time, on the first day of August, 1952, on any inanimate property, immovable by nature or destination, situated within the state of Louisiana, the insurer shall pay to the insured, in case of total destruction, without criminal fault on the part of the insured or the insured's assigns the total amount for which the property is insured, at the time of such total destruction, in the policy of such insurer.

B. "Under any fire insurance policy, which may be written hereafter, and which is intended to take effect, at or after 12 o'clock noon, Central Standard Time, on the first day of August, 1952, on any inanimate property, immovable by nature or destination, situated within the state of Louisiana, the insurer shall pay to the insured, in case of partial damage, without criminal fault on the part of the insured or the insured's assigns, such amount, not exceeding the amount for which the property is insured at the time of such damage, in the policy of such insurer, as will permit the insured to restore the damaged property to its original condition. * * *" (Emphasis ours.)
The statute as originally written provided that "the full amount of the insurance on the property so destroyed (totally) shall be paid by the insurer". The new statute says "the insurer shall pay to the insured, in case of total destruction, * * * the total amount for which the property is insured * * *." (Emphasis ours.)
It seems clear that the purpose of this amendment was to remove any ambiguities created by the Lighting Fixture case, not only with regard to the problem of what objects, when insured, are governed by the valued policy law, but also the uncertainties surrounding insurable interest. The Legislature simply expressed its desire that in the event of a loss, an insured party shall receive the indemnity for which he paid.
This position seems to be in line with other jurisdictions having valued policy laws for we find in 29A. Am.Jur., Insurance §1556, page 656:
"It is recognized by all the cases decided upon the question that under a valued policy or the provisions of a valued policy statute, the insured insuring the property at a given valuation accepted by the insurer at the time of the issuance of the policy as the value of the insured's interest may recover the full value insured, even though he in fact has a limited or qualified interest worth less than the amount of the insurance. The insurer may not go behind the policy and show that the insured's interest is worth less than the amount of the policy."
*843 This same conclusion is announced in 68 A.L.R. 1344 at page 1352.
Having decided that the insurer may not question the extent of the insured's interest in the building located on the leased property at the time of loss, it is necessary to determine from the record whether the fire caused a "total loss". Appellants argue there was less than total destruction and their liability should be limited to the cost of putting the premises in the same condition as before the fire.
Defendants introduced witnesses who testified that those portions of the premises still standing which included walls and the slab foundation could be safely used to restore the building to its former condition. However, the evidence discloses that the fire caused extensive damage to the building consisting of roof collapse, partial charring of walls, damage to portions of the concrete slab foundation, together with possible other damage which might not be readily apparent. Therefore, we think that there was a total loss of the building within the terms of the policy. For, as was said in Occhipinti v. Boston Ins. Co, La. App.Orleans, 1954, 72 So.2d 326, 329, a case involving a similar situation wherein a portion of the insured building remained after a fire:
"* * * We have in mind a situation such as that which is presented here; where there remains standing and in place sufficient parts of the building and foundations to justify the belief that the owner, if he had no insurance, would probably have used those parts, but that there is nevertheless a fair possibility that defects might later develop. In such case we are not at all sure that it would be fair to say that the owner must take the chance of using such portions of the building and such foundations as remain. Should defects develop a considerable time after construction had been completed, the owner would be in a very disadvantageous situation. Where there exists reasonable possibility for doubt as to the condition of those walls or foundations which remain, we think that the owner should not be forced to submit to the use of those portions of the original building and take the chance that no defects will later manifest themselves."
Plaintiff was awarded penalties and attorney's fees against defendants by the judge below. However, there was a reasonable disagreement as to the factual issue of the amount of damage to the building and we do not believe that the actions of the insurers herein were of such an arbitrary and capricious nature to justify such an award and the same is denied.
We further recognize right of intervenor, Edward G. Merhige, for indemnity arising out of the consolidated suit of L. A. West v. The Forge, Inc., et al., and the same ordered to be paid out of the proceeds of this judgment.
For the reasons assigned, the judgment is amended by denying interest and attorney's fees, and as amended, it is affirmed at appellant's cost.
Amended and affirmed.

On Application for Rehearing.
PER CURIAM.
In an application for a rehearing, attention is directed to an error in our original opinion wherein the judgment of the lower court was amended by denying "interest and attorney's fees", whereas it was intended to deny "penalties and attorney's fees".
To rectify this error, the last paragraph of our original decree is corrected to read:
For the reasons assigned, the judgment is amended by denying penalties and attorney's fees, and as amended, it is affirmed at appellant's cost.
The application for a rehearing is denied.