412 So.2d 662 (1982)
Donald R. MILLER, Agent, Plaintiff-Appellee,
v.
HARTFORD FIRE INSURANCE COMPANY, Defendant-Appellant.
No. 14784.
Court of Appeal of Louisiana, Second Circuit.
March 2, 1982.
Rehearing Denied April 12, 1982.
Writ Denied June 4, 1982.
*663 Donald R. Miller, Shreveport, for plaintiff-appellee.
Cook, Yancey, King & Galloway by Charles Tutt, Shreveport, for defendant-appellant.
Before PRICE, MARVIN and JASPER E. JONES, JJ.
En Banc. Rehearing Denied April 12, 1982.
JASPER E. JONES, Judge.
Hartford Fire Insurance Company appeals a judgment against it for $14,000 in favor of Don R. Miller, in his capacity as agent for John W. Miller, Jr. (hereinafter referred to as John Miller) and John McGrew. The policy was issued by appellant to John Miller for a policy period commencing May 2, 1975 and expired May 2, 1978, by the terms of which appellant insured a one-story frame dwelling for $14,000. On July 26, 1977, while this policy was in effect, the dwelling insured by appellant was totally destroyed by fire.
At the time the fire loss occurred the owner of the property was John McGrew. John Miller, the named insured in the policy, owned a mortgage note signed by McGrew in the principal amount of $4,000 dated December 13, 1972, bearing 8% per annum interest from due date, due on or before April 10, 1973, on which no payment had been made.
John Miller, along with two other individuals, had acquired the property on which the insured dwelling was located from Mrs. Avis Hays Neal on May 5, 1969, and as part of the consideration for the purchase price had executed an installment note payable to Mrs. Neal, secured by a mortgage and vendor's lien in the amount of $12,000 upon the property upon which the dwelling insured by Hartford was located. John Miller subsequently acquired from his co-owners the interest they had acquired from Mrs. Neal and became the full owner of the property subject to the outstanding mortgage indebtedness in favor of Mrs. Neal.
Subsequent to John Miller's acquisition of full ownership in the property, he on December 13, 1972, conveyed the property to McGrew for $32,000, $4,000 of which was paid in cash. The balance of $28,000 was represented by one installment mortgage note in the amount of $24,000 and one $4,000 mortgage note which was owed by John Miller at the time of the fire. John *664 Miller had prior to the fire sold the $24,000 mortgage note to J. C. Watson. Though the initial Neal mortgage was outstanding and partially unpaid at the time John Miller sold the property to McGrew, no reference to the Neal mortgage was contained in the sale from Miller to McGrew, and Miller continued to pay on the Neal mortgage subsequent to his disposal of the property to McGrew.
In order to protect Mrs. Neal's security, and to assure that she would receive the unpaid balance on her mortgage note in the event the improvements on the property should be destroyed by fire, John Miller had at all times maintained fire insurance on the property with the policies containing a mortgage payable clause in favor of Mrs. Neal. He testified he believed that the policies had always been issued by Hartford Fire Insurance Co., but the only policy introduced into evidence was the one issued by Hartford on March 2, 1975. At the time this policy was issued Miller was no longer the owner of the property, and he testified that his sole reason for acquiring the policy was to protect the interest of Mrs. Neal. There is no evidence that he intended in any way to provide protection for the benefit of McGrew who was the record owner of the property at the time the fire loss occurred.
In the year 1977, before the fire loss of July 26, 1977, John Miller paid in full the Neal note and received it from Mrs. Neal.
The mortgage deed from John Miller to McGrew provides as follows, to-wit:
"In the event of failure to pay any of said note * * * or failure to keep said buildings insured, then, and in that event, each and all notes shall immediately become due and collectible at the option of the holder."
It contained no other obligation on the part of McGrew with regard to insurance. He was not required to insure it for any specific amount, nor was he required to protect the mortgagee's interest by including a mortgage payable clause in the insurance policy.
At the time the fire loss occurred McGrew owned a $25,000 Commercial Union Insurance policy and a $15,000 Lafayette Fire Insurance policy, each providing coverage on the improvements on the property, but John Miller was not designated in the mortgage payable clause on either of these policies and John Miller was totally unaware of the existence of these policies at the time the fire loss occurred. Neither of the fire policies owned by McGrew were placed into evidence, but in answer to interrogatories the plaintiff indicated that J. C. Watson, to whom John Miller had assigned the $24,000 McGrew note which he had received as part of the consideration of the property, was designated as the loss payee in the Commercial Union Insurance policy.
On November 8, 1977 Commercial issued its draft in the amount of $25,000 payable to McGrew, John Miller, Watson, and Donald Miller, attorney, in payment of its obligation under McGrew's fire policy for the fire loss of July 26, 1977. Though the record isn't totally clear, it is apparent that none of the proceeds of the Lafayette insurance policy were ever tendered to John Miller, and this policy plays no part in the operative facts in connection with the resolution of this litigation.
Subsequent to the fire loss John Miller learned from his acquaintance Watson of the existence of the Commercial policy and was further advised by Watson, who was knowledgable in insurance matters, that his $4,000 note would be paid by Commercial, and for that reason John Miller planned to make no claim against Hartford for the collection of his note under the policy which he had purchased from Hartford primarily for the protection of Mrs. Neal. McGrew, however, was interested in requiring John Miller to pursue his claim against Hartford, and for this reason refused to participate in the endorsement of the Commercial draft and the collection of the proceeds thereon for the purpose of applying them to the outstanding mortgage notes affecting the property in favor of Watson and John Miller.
*665 In order to resolve this dispute, an agreement was worked out by the terms of which the Commercial draft would be endorsed by the payees thereof and deposited in an escrow savings account from which the balance of Watson's note ($18,898.82 as of December 1, 1977) and the balance of John Miller's $4,000 note ($5,119.71 as of October 1, 1977), would be paid at the time when the liability of Hartford had been fully determined. As part of this agreement John Miller agreed to cooperate in any manner necessary in the pursuit of the fire loss claim against Hartford, including filing a suit in his name.
It was further agreed that any sums obtained from the Hartford policy would be the property of McGrew or his assignees regardless of in whose name the Hartford funds might be recovered. The agreement further provided that Watson and John Miller could be paid from the escrow account at any time and would receive only the interest due on their respective notes up to the date of payment.
In furtherance of this agreement the Commercial draft was collected and Watson was paid $18,955.66 in payment of his mortgage note and the balance of said Commercial draft in the amount of $6,044.34 was deposited in a savings account in the Peoples Bank of Shreveport in the name of John Miller and Donald R. Miller.
In furtherance of the agreement, John Miller executed an assignment to Donald R. Miller, agent for McGrew, of all his interest in the $4,000 mortgage note and of his claim against Hartford in the amount of $14,000.
There was evidence introduced at trial of the case indicating that the house which was destroyed in the fire was worth about $60,000 and under these circumstances the value of the house exceeded the total amount of fire insurance protection reflected in the $25,000 Commercial policy, the $15,000 Lafayette policy, and the $14,000 Hartford policy.
The reasons for judgment rendered by the trial judge are not entirely clear, but we here conclude that he finds plaintiff Don Miller, as agent for John Miller, is entitled to judgment against the insurer for the amount McGrew owed him on the note and that Don Miller, as agent for McGrew, is entitled to judgment for the difference between the $14,000 insurance coverage and the amount that he owed John Miller on the note. The trial judge bases this conclusion on a finding that McGrew was an insured under the policy along with John Miller. The trial judge apparently disregards the assignment.
The judgment appealed from is as follows:
"Judgment herein in favor of plaintiff Don R. Miller, agent and attorney in fact for John W. Miller, Jr. and John McGrew, in the amount of Fourteen Thousand ($14,000) Dollars."
The amount to which each is entitled is not therein specified. As we construe the plaintiff's brief his theory is that the judgment is correct and that by the terms of the stipulation entered into in connection with the escrow agreement and the assignment, the judgment will belong to John McGrew.
We construe the theory of plaintiff to be that McGrew is an insured under the Hartford policy and as such is entitled to recover from Hartford in his own right the difference between the amount he owed John Miller and the $14,000, and that he is entitled to recover from Hartford the amount he owed John Miller because he paid this amount to John Miller from the proceeds of the Commercial policy and received from John Miller an assignment of all John Miller's right under the Hartford policy which would have been John Miller's right to recover from Hartford the balance of the note at the time of the fire.
Plaintiff alternatively contends that even if McGrew was not an insured under the Hartford policy, John Miller was insured under the Hartford policy for $14,000 by virtue of the valued policy law, and that McGrew received from John Miller the right to recover the full $14,000 by virtue of the assignment that he received from John Miller. Plaintiff contends the valued policy *666 law, LSA-R.S. 22:695[1] requires the insurer to pay the full amount of the policy even though John Miller's insurable interest was only the unpaid balance of his note, which was approximately $5,000 at the time of the fire loss.

WAS JOHN McGREW AN INSURED UNDER THE HARTFORD POLICY?
John Miller purchased the Hartford policy wherein he was the named insured and paid the premiums for it. He testified that he purchased it primarily for the protection of Mrs. Neal who was designated as a mortgage payee under the policy. He did not purchase it for the protection of John McGrew, whose name does not appear on the policy. Though Mrs. Neal's note had been paid at the time of the fire loss, John Miller maintained an insurable interest in the insured building within the contemplation of LSA-R.S. 22:614[2] by virtue of the $4,000 mortgage note which he held on the property at the time he purchased the policy in 1972 and which remained unpaid at the time of the fire loss in 1977. John Miller had no knowledge of what, if any, action McGrew had taken about providing insurance coverage on the property. Hartford was not even aware that McGrew owned the property. There was no intention by John Miller, nor by Hartford, to provide coverage for McGrew's insurable interest in this property. A mortgagee has a totally separate insurable interest and a contract of insurance purchased by him to protect this insurable interest belongs solely to him and does not accrue to the benefit of the mortgagor. The contract of insurance is enforceable solely by the mortgagee payee and the proceeds of the policy does not inure to the benefit of the mortgagor. See Appleman 5 A, Sec. 3381.
*667 We recognize that a mortgagee could purchase a fire insurance policy to protect his interest and the interest of the mortgagor-owner of the property, and under these circumstances both would be insured under the policy. In the case of Nielsen v. Lafayette Insurance Company, 300 So.2d 217 (La.App.2d Cir. 1974), the policy was purchased by the mortgagee. The court there found from the facts and the reference in the policy to the mortgagor that it was the intention of the mortgagee and the insurer at the time the contract of insurance was confected that the mortgagor would be an insured under the policy.
In the case here presented, there was no intention for the mortgagor to be an insured under the contract. We find the policy purchased by John Miller was to protect only the mortgagee's interest. McGrew was not an insured under the policy and it does not inure in any way to his benefit, and in this respect it is similar to the policies construed by the court in the case of City of New York Ins. Co. v. Abraham, 20 So.2d 183 (La.App.2d Cir. 1944) and Kilson v. American Road Ins. Co., 345 So.2d 967 (La.App.2d Cir. 1977). In these cases the mortgagor-property owners were held not entitled to receive a benefit from insurance policies purchased by the mortgagee for its protection and wherein only the mortgagee was insured.
WHEN THE FIRE LOSS OCCURRED WAS JOHN MILLER ENTITLED TO CLAIM FROM HARTFORD THE TOTAL AMOUNT OF $14,000 FOR WHICH THE PROPERTY WAS INSURED OR WAS HE LIMITED TO THE BALANCE DUE ON THE MORTGAGE OF APPROXIMATELY $5,000?
Plaintiff contends that under the provisions of the valued policy law, R.S. 22:695, that John Miller was entitled to recover the $14,000 for which the property was insured and that the insurer cannot contest the amount by contending that John Miller's insurable interest was limited to the unpaid balance of the mortgage note.
The purpose of the valued policy law was to require the fire insurer to pay the face amount of the policy to the insured owner of the property for which it had collected premiums so long as the insured committed no fraud in the acquisition of the policy. The rationale is that the insurer should not be entitled after the loss to contend the value of the property was less than the face amount of the insurance in the policy for which it had collected the premiums.
The supreme court in the case of Lighting Fixture Supply Co. v. Pacific Fire Ins. Co. of New York, 176 La. 499, 146 So. 35 (1932), interpreted the valued policy law as it existed at that time and held it did not preclude the insurer from going into the extent of the insured's insurable interest. The court there said:
"There is nothing in the valued policy law which prohibits the insurer from contesting the extent of the insurable interest of the insured in the immovable described in the policy. The statute presumes that the insured is the owner of the property insured, and merely prescribes a rule of public policy for establishing the pecuniary loss suffered by its partial or total destruction by fire." Id. 146 So. at 38.
The statute was amended in 1952 to provide among other things:
"The insurer shall pay to the insured in case of total destruction the total amount for which the property is insured."
This language replaced the earlier language in the valued policy law which provided the liability of the insurer to be "the full amount of the insurance on the property so destroyed shall be paid by the insurer" which had been the critical language of the statute at the time of the Lighting Fixture case.
This court in the decision of The Forge, Inc. v. Peerless Casualty Company, 131 So.2d 838 (La.App.2d Cir. 1961) interpreted the valued policy law subsequent to the 1952 amendment:
"The statute as originally written provided that `the full amount of the insurance on the property so destroyed (totally) shall be paid by the insurer.' The new *668 statute says `the insurer shall pay to the insured, in case of total destruction, * * * the total amount for which the property is insured.'
It seems clear that the purpose of this amendment was to remove any ambiguities created by the Lighting Fixture case, not only with regard to the problem of what objects, when insured, are governed by the valued policy law, but also the uncertainties surrounding insurable interest. The Legislature simply expressed its desire that in the event of a loss, an insured party shall receive the indemnity for which he paid.
This position seems to be in line with other jurisdictions having valued policy laws for we find in 29A. Am.Jur., Insurance § 1556, page 656:
`It is recognized by all the cases decided upon the question that under a valued policy or the provisions of a valued policy statute, the insured insuring the property at a given valuation accepted by the insurer at the time of the issuance of the policy as the value of the insured's interest may recover the full value insured, even though he in fact has a limited or qualified interest worth less than the amount of the insurance. The insurer may not go behind the policy and show that the insured's interest is worth less than the amount of the policy.'" Id. at 842.
Subsequent to the Forge decision in which the supreme court denied writs, there were numerous decisions which followed Forge, including Roberts V. Houston Fire & Casualty Company, 168 So.2d 457 (La. App.3d Cir. 1964), which was decided after Act 464 of the 1964 Legislature which added Provision E to R.S. 22:695, which provides as follows:
"E. Liability of the insurer, in the event of total or partial loss, shall not exceed the insurable interest of the insured in the property and nothing herein shall be construed as precluding the insurer from questioning or contesting the insurable interest of the insured." Id. at 460.
The court in Roberts applied the Forge rationale to the claim of an insured lessee because the operative facts occurred in 1960 before Section E was added to the valued policy law and denied the insurer the right to question the extent of the plaintiff lessee's insurable interest in the property insured. However, the court there recognized that the 1964 amendment had changed the law. Although the court did not elaborate it was pointing out that the addition of Section E to the valued policy law now permitted a fire insurer to question the value of the insurable interest of the insured.
Former Justice Tate, while serving on the Third Circuit, in the case of Harvey v. General Guaranty Insurance Company, 201 So.2d 689 (La.App.3d Cir. 1967), stated that the purpose of the 1964 amendment was as follows:
"4. Actually, the probable purpose of the amendment is to overrule decisions applying the valued policy law in situations such as in Forge v. Peerless Casualty Co., La.App. 2 Cir., 131 So.2d 838 and Roberts v. Houston Fire & Casualty Ins. Co., La.App. 3 Cir., 168 So.2d 457, where the policyholder did not possess full or undivided ownership of the property destroyed, so that his actual insurable interest was only for a proportion of the total property destroyed. See Lighting Fixture Supply Co. v. Pacific Fire Ins. Co., 176 La. 499, 146 So. 35." Id. FN. p. 693.
We agree with the Harvey footnote to the extent that we find that under the provisions of Section E of R.S. 22:695 that Hartford's liability under the fire policy issued by it which covered the interest of mortgagee John Miller is limited to the insurable interest of John Miller in the property and his insurable interest is the amount of the unpaid balance on the mortgage note owned by him as of the date of the loss.
WHAT CLAIM AGAINST HARTFORD DID JOHN MILLER HAVE TO ASSIGN TO DON MILLER, AGENT, SUBSEQUENT TO THE ESCROW AGREEMENT?
In the case of Wreidt v. Beckenhauer, 183 Neb. 311, 159 N.W.2d 822 (1968), the defendant *669 purchased a fire insurance policy on the improvements on property owned by him and then sold the property to the plaintiff on a mortgage deed. The insured property was thereafter partially destroyed by fire and the insurer paid the loss to the defendant. The plaintiff sued the defendant to recover the money received by him from the insurer. The insurer intervened claiming that it was subrogated to defendant's right in the mortgage debt of the plaintiff to the extent of the payment it had made to the defendant on the fire loss.
The court held that because there was no assignment of the policy by the defendant to the plaintiff and no indication in the facts which otherwise indicated any intention that the policy was to have insured the plaintiff, that the insurance policy at the time of the loss was for the protection of the defendant mortgagee only. The court concluded the proceeds from the policy did not accrue to the benefit of the plaintiff and that plaintiff's mortgage indebtedness was not reduced by the payment by the insurer to the mortgagee under the policy. The court further held that the insurer was subrogated to defendant's mortgage claim against plaintiff to the extent of its payment on the fire loss. The rationale of the court is as follows:
"We must necessarily conclude that the insurance carried by defendant Beckenhauer was in the nature of separate insurance carried for his protection only, and that plaintiff mortgagor had no interest therein, and no right to have the insurance paid credited on the mortgage. `As the mortgagor and mortgagee each has an insured interest in the mortgaged property, insurance taken by one on his own interest and in his own favor alone does not inure to the benefit of the other. * * * where the mortgagee procures insurance on his separate interest, for his own benefit and at his own cost, and without any agreement with the mortgagor with respect thereto, the mortgagee is entitled to the proceeds, the mortgagor having no interest therein.' 46 C.J.S. Insurance § 1146, p. 26. See, also, Ponder v. Gibson-Homans Co., 166 Ark. 591, 266 S.W. 682; LeDoux v. Dettmering, 316 Ill.App. 98, 43 N.E.2d 862.
* * *
In view of the foregoing, it is clear that plaintiff has no interest in or right to the insurance proceeds. They are the property of the mortgagee Beckenhauer, but since the only interest of Beckenhauer was, in essence, the insuring of his mortgage security, he has an insurable interest only to the extent of the amount owing under the mortgage. If this indebtedness is reduced, the mortgagee's interest is reduced in like measure. As to him, the insurance contract is a contract of indemnity. In the event of a loss by fire of the insured property, or a part thereof, the mortgagee is entitled to be compensated by his insurance, but if the mortgage indebtedness is subsequently paid in full, he has not sustained a security loss and insurer is entitled to recover the insurance paid. `If the mortgagee, or one in like position, is the party insured and the policy is written so as to cover his interest only, insurer, on payment to the mortgagee, becomes subrogated pro tanto to the rights of the mortgagee against the mortgagor, even though the policy contains no subrogation clause purporting to give such right to insurer; * * *.' 46 C.J.S. Insurance § 1213, p. 183. See also Aetna Life Ins. Co. v. National Union Fire Ins. Co., 98 Neb. 446, 153 N.W. 553, L.R.A. 1916A, 784; LeDoux v. Dettmering, supra." Id. 159 N.W.2d at 825.
In the decision of City of New York Ins. Co. v. Abraham, 20 So.2d 183 (La.App.2d Cir. 1944), this court recognized that a policy which insured only the mortgagee does not accrue to the benefit of the mortgagor and that the insurer was entitled to receive a subrogation from the mortgagee to the mortgagee's claim against the mortgagor upon paying the fire loss to the mortgagee and that the insurer had a right to assert the cause of action against the mortgagor The court stated the law to be as follows:
"It is well settled that under the facts and circumstances as exist in this case a subrogation, such as we are dealing with, is perfectly legal and vests in the subrogee *670 the same right to foreclose the mortgage as was vested in the original mortgagee, to the extent of the subrogee's interest. The whole matter is gauged and determined as between the mortgagee and the subrogee, the insurer, without any reference whatever to the owner or ownership of the property. This rule is clearly stated in Cooley's briefs on Insurance, Volume 7, page 6718, as follows:
`It is a general rule that where the interest of a mortgagee is separately insured for his own benefit, and a loss occurs before payment of the mortgage, the underwriters are bound to pay the amount of such debt to the mortgagee, providing it does not exceed the insurance, and are thereupon entitled to an assignment of the debt from the mortgagee, and may recover the same from the mortgagor. The payment of the insurance by the underwriter does not, in such a case, discharge the mortgagor from the debt, but only changes the creditor.'
Many cases from various jurisdictions are cited in support of the rule, including the early case of Carpenter v. Providence Washington Insurance Company, 16 Pet. 495, 10 L.Ed. 1044. There are a few cases holding to the contrary, but they constitute a very frail minority rule. The rule is much more tersely stated in 29 American Jurisprudence, 1010, § 1351, as follows:
`It is generally held that where a mortgagee insures the mortgaged property at his own expense and for his own benefit and a loss occurs, the insurer on paying the loss to the mortgagee is subrogated, to the extent of the amount thus paid, to the means of enforcing payment of the original obligation by the debtor, the claim not being extinguished until payment by him. * * * *'" Id. at 185.
See also Capital Building and Loan Association v. Northern Ins. Co., 166 La. 179, 116 So. 843 (1928); Federal Union Ins. Co. v. Griffin, 151 So. 107 (La.App.2d Cir. 1933).
In the case of Mann v. Glens Falls Ins. Co., 541 F.2d 819 (9th Cir. 1976), the plaintiff purchased a fire insurance policy on her property and thereafter sold it retaining a mortgage. The house was then destroyed by fire. She did not assign the policy to purchaser of the property and the purchaser was not included in the policy as a named insured. The court found the policy to be a "mortgagee-only type policy" in which the purchaser had no interest. The insurance company tendered the plaintiff the $15,000 provided for by the policy but required that she subrogate to it her claim against the mortgagor to the extent of the payment, and she refused to execute the subrogation and sued the insurer for the benefits under the policy. During the litigation the purchaser reconveyed the property to the plaintiff which had the effect of terminating the mortgage debt to the plaintiff. The court held that because the plaintiff had destroyed the subrogation rights of the insurer that "her insurable interest and rights under the policy expired."
John Miller, had as mortgagee, an insurable interest to the extent of the unpaid balance on the note owed him by McGrew and was entitled to protect his security by securing the Hartford policy. His insurable interest being separate from that of McGrew he was not deprived of it by virtue of the fact that McGrew purchased insurance against which he might assert a claim in the event of a fire for the amount owed on the note.
We note that in the case of Hartford Fire Ins. Co. v. Landreneau, 140 So. 52, 53 (La. App. 1st Cir. 1932), the court held that a first mortgagee was denied the right to the proceeds of a fire insurance policy purchased by the mortgagor where the mortgagor named the second mortgagee as the designated loss payee. The court stated:
"The most that the mortgagee is entitled to under such an agreement, as we read the authorities we can find on the subject, is an equitable lien upon the proceeds of the policy to the extent of his interest in the property. This lien he most probably could successfully assert against the proceeds of a policy payable directly to the mortgagor. But where, in a case like this, the policy contains a rider *671 under which the loss, if any, is made payable to another party specifically designated by name, the rights of that party to the proceeds, even though he be the holder of a second mortgage, cannot, in our opinion, be defeated if those provisions of law making an insurance contract strictly a personal contract which in no sense runs with the property mean anything." Id. at 55.
In the case of Kleinpeter v. Ferrara, 179 La. 193, 153 So. 689 (1934), the first mortgagee was denied the proceeds of a fire insurance policy purchased by the mortgagor without a loss payee clause in favor of the mortgagee where a judgment creditor of the mortgagor had by garnishment upon the insurer seized the proceeds of the policy.
In the case of Davis v. Aetna Casualty & Surety Company, 329 So.2d 868 (La.App.2d Cir. 1975), a flood insurer who had placed the mortgagee's name, along with the name of the insured, upon a flood loss draft where the mortgagee was not named as a loss payee in the policy was held for penalties and attorney's fees based upon a holding that the draft issued in this manner did not constitute payment under the policy.
Though in most cases a mortgagee, not named as insured upon the mortgagor's policy, will be found to be an insured under the mortgagor's policy, see Diaz v. Cherokee Insurance Company, 275 So.2d 922 (La.App. 4th Cir. 1973), he cannot be certain of protection under such policy as is reflected by the results in Landreneau, Klienpeter, and Davis, supra. For these reasons the possibility of being able to collect from a policy owned by a mortgagor does not deprive the mortgagee of his separate insurable interest and the right to protect it by buying an insurance policy of his own.
John Miller had a valid claim against Hartford following the fire loss for the amount owed him by McGrew on the note. Payment of this loss by Hartford would not have accrued to the benefit of McGrew, nor paid the note which he owed John Miller upon the property. Hartford would have been entitled to subrogation of Miller's claim on the note against McGrew under the following provisions of its policy:
"Whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made under all securities held as collateral to the mortgage debt, or may at its option pay to the mortgagee (or trustee) the whole principal due, or to grow due, the mortgage, with interest and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of his, her or their claim."
When John Miller endorsed the Commercial draft and placed the funds in his name in a savings bank escrow account and agreed that he had received payment of his note from the sums collected from this draft to be paid unconditionally to him when Hartford's liability had been determined, he had effectively terminated McGrew's liability on the note. John Miller no longer had an insurable interest under the Hartford policy nor could he have complied with Hartford's subrogation right which it would have been entitled to under the policy.
Because John Miller had no claim against Hartford, he could not assign a claim against Hartford to Don Miller as agent for John McGrew. Don Miller had no cause of action against Hartford either as agent for John Miller or as agent for John McGrew.
Appellee's contention in brief that this appeal is untimely is totally without merit and requires no discussion.
The judgment appealed from is REVERSED and plaintiff's demands are rejected. All costs are to be paid by appellee.
NOTES
[1] R.S. 22:695A. Under any fire insurance policy, which may be written hereafter, and which is intended to take effect, at or after 12 o'clock noon, Central Standard Time, on the first day of August, 1952, on any inanimate property, immovable by nature or destination, situated within the state of Louisiana, the insurer shall pay to the insured, in case of total destruction, without criminal fault on the part of the insured or the insured's assigns the total amount for which the property is insured, at the time of such total destruction, in the policy of such insurer.

B. Under any fire insurance policy, which may be written hereafter, and which is intended to take effect, at or after 12 o'clock noon, Central Standard Time, on the first day of August, 1964, on any inanimate property, immovable by nature or destruction, situated within the State of Louisiana, the insurer shall pay to the insured, in case of partial damage, without criminal fault on the part of the insured or the insured's assigns, such amount, not exceeding the amount for which the property is insured, at the time of such partial damage, in the policy of such insurer, as will permit the insured to restore the damaged property to its original condition; provided, however, that for any loss of an insured object which would constitute total loss under Sub-section A of this provision but which loss is covered by a blanket-form policy of insurance, Subsection B of this provision shall apply, and the insurer shall pay to the insured an amount equal to the actual cash value at the time of the loss of each insured object so destroyed, not exceeding the total amount of the insurance.
C. Nothing herein shall be so construed to prevent the insurer, under any such fire insurance policy, at such insurer's own expense and without contribution on the part of the insured, from replacing property, immovable by nature or destination, partially damaged or totally destroyed.
D. Any clause, condition or provisions, which may be included in any policy of fire insurance, written to take effect at or after 12 o'clock noon, Central Standard Time, on the first day of August, 1952, contrary to the provisions of this Section, shall be null and void; but nothing herein shall be construed to prevent any insurer from cancelling or reducing the insurance on any property, immovable by nature or destruction, previous to damage to or destruction thereof.
E. Liability of the insurer, in the event of total or partial loss, shall not exceed the insurable interest of the insured in the property and nothing herein shall be construed as precluding the insurer from questioning or contesting the insurable interest of the insured.
[2] R.S. 22:614A. No contract of insurance on property or of any interest therein or arising therefrom shall be enforceable except for the benefit of persons having an insurable interest in the things insured.

B. "Insurable interest" as used in this Section means any lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage.