168 So.2d 457 (1964)
Earl Eugene ROBERTS, Plaintiff-Appellee,
v.
HOUSTON FIRE & CASUALTY COMPANY et al., Defendants-Appellants.
No. 1262.
Court of Appeal of Louisiana, Third Circuit.
October 27, 1964.
Rehearings Denied November 18, 1964.
*458 Bienvenu & Culver, by P. A. Bienvenu, New Orleans, Davidson, Meaux, Onebane & Donohoe, by Richard C. Meaux, Lafayette, for defendants-appellants.
Pierre Olivier, Jr., and William E. Logan, by William E. Logan, Jr., Lafayette, for plaintiff-appellee.
Before TATE, FRUGE and CULPEPPER, JJ.
*459 FRUGÉ, Judge.
This suit was instituted by Earl Eugene Roberts as the insured under certain fire insurance policies issued by the defendants, Houston Fire & Casualty Company, Norwich Union Fire Insurance Society, Insurance Company of North America, and Phoenix Insurance Company. The policies covered the building and contents of the establishment known as the Embassy Bar and Lounge. Judgment at the trial on the merits was in favor of plaintiff. Defendants appealed and plaintiff answered the appeal praying for an increase in the award.
On February 28, 1956, plaintiff Roberts leased from the owner the property on which the Embassy Bar and Lounge was constructed. The term of the lease was for ten years, with a provision granting the lessee Roberts an option of renewal for an additional five years. The lease provided that all buildings erected on the leased premises would, on termination of the lease, become the property of the lessor without any obligation of reimbursement. On August 1, 1959, Roberts entered into a credit sale with Helen Allen of all his interest in the lease. This credit sale was secured by mortgage and vendor's privilege. Due to Helen Allen's failure to meet the payments as provided in the agreement, Roberts instituted executory proceedings against her. Helen Allen obtained a temporary restraining order enjoining the proceedings. This temporary restraining order was dissolved on September 28, 1960. At the hearing on that day, Roberts first learned that his interest in the property was not protected by Helen Allen's fire insurance, there being no loss payable clause in the policy. On obtaining this information, Roberts immediately requested Merlin C. Smith of the Lafayette Insurance Agency, Inc. to issue fire insurance policies in the amount of $16,000 on the building and $13,000 on the contents. Through clerical error, the binders were issued in the amounts of $13,000 on the building and $16,000 on the contents. The Embassy Bar and Lounge was gutted by fire on September 29, 1960, severe damage being done to the building and contents.
After ordering a reformation of the policies to conform with the intent of the parties, the trial judge awarded plaintiff recovery in the amount of $13,000 for damage to the buildings and $10,193.73 for damage to the contents. Defendants-appellants contend the amount awarded plaintiff should be reduced for the following reasons: (1) the amount awarded plaintiff for damage to the building was in excess of his insurable interest therein; (2) damage to the building in the amount of $13,000 had not been established; (3) the contents were not damaged to the extent of $10,193.73; (4) plaintiff should not have been allowed to recover penalties and attorney's fees.
Plaintiff argues that under the jurisprudential interpretation of LSA-Revised Statute 22:695, referred to as the "Valued Policy Statute", the insurer is precluded from questioning the extent of plaintiff's insurable interest in the building. LSA-Revised Statute 22:695 provides, in pertinent part:
"B. Under any fire insurance policy * * * on any inanimate property, immovable by nature or destination, situated within the state of Louisiana, the insurer shall pay to the insured, in case of partial damage, without criminal fault on the part of the insured or the insured's assigns, such amount, not exceeding the amount for which the property is insured, at the time of such partial damage, in the policy of such insurer, as will permit the insured to restore the damaged property to its original condition."
The Louisiana Supreme Court in Lighting Fixture Supply Company v. Pacific Fire Insurance Company, 176 La. 499, 146 So. 35, interpreted the Valued Policy Statute as it existed at that time (La.Acts 1900, No. 135) as not precludings an insurer from going into *460 the question of extent of insurable interest. However, in the case of The Forge, Inc. v. Peerless Casualty Company, La.App. 2 Cir., 131 So.2d 838, the Court of Appeal interpreted the 1952 and 1958 amendments to the Valued Policy Statute as legislatively overruling the Lighting Fixture case. The Supreme Court refused to issue writs, stating: "Writs refused. We find no error of law in the ruling complained of."
The decision of The Forge case was followed in Southern Produce Company v. American Insurance Co. of Newark, New Jersey, La.App. 4 Cir., 166 So.2d 59, and Shore v. Northwestern Underwriters of Citizens Insurance Co. of New Jersey, D.C., 208 F.Supp. 461. This court approved The Forge decision in Welch v. New York Underwriters Insurance Co., La.App. 3 Cir., 145 So.2d 376.
The defendant argues that the 1964 Legislature, in amending LSA-Revised Statute 22:695, was only stating its approval of the law as expressed in the Lighting Fixture case. This amendment, Act 464 of the 1964 Legislative Regular Session, provides,
"E. Liability of the insurer, in the event of total or partial loss, shall not exceed the insurable interest of the insured in the property and nothing herein shall be construed as precluding the insurer from questioning or contesting the insurable interest of the insured."
It is our view that this 1964 amendment represents a change in the law as it existed at the time the facts of this case arose. The policies were written and the fire occurred in 1960. Thus we find that defendants could not contest the extent of insurable interest of plaintiff Roberts in the building of the Embassy Bar and Lounge. The defendants, in their appeal, sought only to establish the extent of the insurable interest, admitting that some insurable interest did exist.
We now turn to the question of the extent of damage done to the buildings. Plaintiff spent a sum of $7,118.16 for what he termed as temporary repairs to the buildings in order to continue operation of the Embassy Bar and Lounge. At the trial plaintiff testified that the building was visibly not in as good condition after the temporary repairs had been made as it was prior to the fire in that there is now a sag in the roof and evidence of charring and water damage in the interior.
Mr. Martin Monies of Monies' Lumber Company testified that on the request of the General Adjustment Bureau he submitted an estimate of repairs to the buildings in the amount of $14,987. He indicated, however, that in his opinion the estimated repairs would place the building in somewhat better condition than it was prior to the fire.
Another estimate was made by Mr. Privat of Privat Lumber Company, Inc. Mr. Privat's estimate called for repairs at a cost of $12,349.13 in addition to the temporary repairs already made. His estimate was, however, based on many facts of which he had no personal knowledge. He did, however, corroborate plaintiff's statement that the repairs already made had not placed the building in as good a condition as before the fire.
Defendants introduced no witnesses on the question of extent of damages to either the buildings or to the contents. This court is not prepared to say that the trial judge's award of $13,000 for necessary repairs to the building was either manifestly excessive or inadequate.
The judgment appealed from allowed the plaintiff $10,193.73 as the amount necessary to replace and restore the contents. Apparently in arriving at this figure the district judge relied in large degree on the estimates of the cost of replacing the equipment damaged and destroyed by fire with new equipment. Most of the equipment damaged or destroyed was approximately *461 four years old. Depreciation on this equipment should have been taken into account. Williams v. Fire Ass'n of Philadelphia, La.App. 2 Cir., 193 So. 202; Hinson v. British American Assurance Co., D.C., 43 F.Supp. 951; Reliance Ins. Co. v. Orleans Parish School Board, 5 Cir., 322 F.2d 803. Replacement cost is also sometimes an appropriate method of arriving at the value of items of a permanent nature. Williams v. Gallagher Transfer & Storage Co., 170 La. 461, 128 So. 277.
We find the testimony of plaintiff's witness Francis Richard, a restaurant supply firm sales manager, most helpful in determining the value of certain equipment that was in the building. Richard testified that the equipment in the Embassy Bar and Lounge was in good condition prior to the fire and that the replacement cost of such equipment was approximately one-half of the price of similar new equipment. Equipment of the type Mr. Richard referred to had a new list price as follows:

96 Dynasty chairs and 30
 15 × 15 table bases $1407.60
7 Brody booths 2100.00
 Brody front bar 1680.00
 Brody Back bar 675.00
10 Brody chairs 448.00
10 bar stools 386.00
 4 Brody cocktail tables 128.00

Thus, the new list price for these items totals $6,824.60. Assessing the Roberts equipment at one-half the new list price produces a value amount of $3,412.30 for these items.
Although extensive repairs were made by the plaintiff to the above listed equipment, there is considerable testimony that this equipment was incapable of being restored to its previous fine condition. The defendants introduced no evidence to controvert this testimony. Thus, for present purposes these items will be considered as a total loss. The defendants point to testimony in the record of a bid to buy as salvage certain equipment damaged by the fire. However, the record does not show what furnishings were included in this bid and we fail to see how this court can consider salvage value without such information. Accordingly, the plaintiff should be allowed $3,412.30 for these items.
The testimony as to the value of a National Cash Register destroyed in the fire is somewhat confused. However, in our judgment plaintiff established through expert testimony that the value of this item was $850.00 and we accordingly award that amount.
Item No. 6 on the plaintiff's proof of loss is described as a No. 100 Icemaker (La-Cross). Plaintiff testified that the fire completely destroyed the motor and compressor of this icemaker and it was presently being used only for the storage of ice. Mr. Richard's testimony indicates that this icemaker would have had a value of approximately 40% of its cost price of $675.00, or a value of $270.00 prior to the fire. We allow plaintiff that amount on this icemaker.
Item No. 5, a LaCross beverage box, was undeniably damaged by the fire. However, we have no evidence before us as to the extent of the damage or the cost of repair on which we could award recovery. Bennett v. Niagara Fire Ins. Co., La.App. 3 Cir., 126 So.2d 718. Similarly, we have no evidence of the damage done to Item No. 12, the Frigidaire 200 icemaker, and thus must deny recovery for damages done to it by the fire.
Items 9 and 10, a Hamilton Beach bar mixer and a cutting board and bar tools, were replaced at cost of $38.00 and $28.50, respectively, having been completely destroyed by the fire. It appears appropriate to award the cost of replacing these items.
Item 14, a Kirby vacuum cleaner purchased in 1959 at a cost of $210.00, was completely destroyed in the fire. Depreciation would seem to have been only slight in such a short period of time, the fire having occurred in 1960. Therefore, we award the full amount of $210.00 for this item.
*462 A television set was destroyed in the fire. However, it was not the same television set listed as Item No. 15 that had been placed in the building by Roberts, but was one that had been substituted by Helen Allen. It not having been the property of Roberts, we must deny recovery on this item.
Certain items of glassware listed as Items 16, 17, 18 and 19 were apparently destroyed in the fire and could be replaced at a total cost of $303.00. We therefore award this amount.
The parties stipulated that in the opinion of an expert the piano, Item 20, destroyed in the fire had a value of $400.00 immediately prior to the fire. The interrogatories propounded by defendants to the plaintiff show that after the fire the piano had a salvage value of $50.00. Thus we award plaintiff $350.00 for the loss of the piano.
An amplifier system, Item 21, was completely destroyed. Plaintiff offered in evidence a bid to replace the system at a cost of $133.85. This amount seems a proper award for that item.
In summary, we find that a total award of $5,595.65 for damage and destruction of the contents of the Embassy Bar and Lounge is appropriate.
Next, our attention is called to the question of attorney's fees and penalties. The district judge, finding that defendants' failure to pay had been arbitrary and capricious, rendered judgment against defendant allowing plaintiff $3,000 attorney's fees and 12% penalties, with legal interest of 5% on the principal amount, but not on the attorney's fees and penalties.
LSA-Revised Statute 22:658 provides:
"All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount. Provided, that all losses on policies covering automobiles, trucks, motor propelled vehicles and other property against fire and theft, the amount of the penalty in each of the above cases shall be 25% and all reasonable attorney's fees."
If penalties are to be allowed, they are to be based on the difference between the amount tendered by the insurer within sixty days after receipt of proof of loss, and the amount found to be due.
In the instant case, it was stipulated that the defendants, on April 5, 1961, offered to settle plaintiff's claim for a total amount of $11,000. Proof of loss had been received by all the defendants on or before January 19, 1961. Suit was filed March 24, 1961. Thus, no offer or tender was made within the sixty day period following receipt of proof of loss. Therefore, if penalties are to be assessed, they shall be based on the full amount recoverable of $18,595.65.
In the cases of Welch v. New York Underwriters Ins. Co., supra, and Shore v. Northwestern Underwriters of Citizens Ins. Co., 208 F.Supp. 461, in which the present attorney for the defendants appeared *463 and made substantially the same argument concerning insurable interest as was made in the present case, each court saw fit to award penalties and attorney's fees. Therefore, we are constrained to hold that the district court here was not manifestly erroneous in so awarding penalties and attorney's fees under these facts, nor are those attorney's fees manifestly excessive or inadequate.
Plaintiff contends that penalties should be awarded in the amount of 25% rather than 12% as provided in the judgment. We reject plaintiff's contention, adhering to our decision in the Welch case, supra, for the reasons expressed therein that 25% penalties are applicable only to fire and theft insurance on motor propelled vehicles and the like. Shore v. Northwestern Underwriters of Citizens Insurance Co., supra. This reasoning applies equally to penalties awarded on both the buildings and the contents.
The plaintiff appealed the district court's refusal to allow interest on the penalties and attorney's fees. Our jurisprudence is conflicting on this question. In the case of Calhoun v. Star Ins. Co. of America, 159 La. 77, 105 So. 231, our Supreme Court, without comment, allowed recovery of interest on penalties and attorney's fees from date of judicial demand. The First Circuit Court of Appeal, in Chambers v. North British & Mercantile Ins. Co., 175 So. 95, also allowed interest on the penalties and attorneys' fees. In Rickerfor v. Westchester Fire Ins. Co., 186 So. 109, the Orleans Court of Appeal, in amending the trial court's judgment, did not allow legal interest on the penalties and attorney's fees. We shall follow the decision of our Supreme Court and our brothers of the First Circuit.
Thus, judgment shall be rendered for plaintiff and against the defendants in the total principal amount of $18,595.65, with 12% penalties thereon, and $3,000 attorney's fees, together with legal interest on the principal amount, penalties and attorney's fees from date of judicial demand.
For the reasons discussed in this opinion it is adjudged and decreed that there be judgment herein in favor of plaintiff, Earl Eugene (Gene) Roberts, for damage to the building insured by the defendants, and against Norwich Union Fire Insurance Society in the principal amount of $4,875.00 together with attorney's fees in the amount of $621.00; Insurance Company of North America in the principal amount of $4,875.00, together with attorney's fees in the amount of $621.00; Houston Fire & Casualty Company in the principal amount of $3,250.00, together with attorney's fees in the amount of $414.00; and 12% penalty on said principal amounts, and interest at the rate of 5% per annum on said principal amounts, attorney's fees, and penalties.
It is further ordered, adjudged and decreed that there be judgment in favor of plaintiff, Earl Eugene (Gene) Roberts, for damage to the contents insured by the defendants, and against Norwich Union Fire Insurance Society in the principal amount of $1,398.91, together with attorney's fees in the amount of $336.00; Insurance Company of North America in the principal amount of $1,398.91, together with attorney's fees in the amount of $336.00; Houston Fire & Casualty Company in the principal amount of $1,049.19, together with attorney's fees of $252.00; Phoenix Insurance Company in the principal amount of $1,748.64, together with attorney's fees in the amount of $420.00; and 12% penalty on said principal amounts, and interest at the rate of 5% per annum on said principal amounts, attorney's fees, and penalties from March 24, 1961 until paid.
The judgment is affirmed as to all other matters; defendants to pay costs of this appeal as well as costs of trial.
Amended and affirmed.

On Applications for Rehearing.
En Banc. Rehearings denied.