**HILLTOP BOWL, INC., et al.,**

v.

**UNITED STATES FIDELITY & GUAR-
ANTY COMPANY et al. (two cases).**

Civ. A. Nos. 10340, 10341.

United States District Court
W. D. Louisiana,
Shreveport Division.

Oct. 20, 1966.

James J. Dormer, Brown & Dormer,
J. Bennett Johnston, Jr., Johnston &
Johnston, Shreveport, La., for plaintiffs.

Charles L. Mayer, Mayer & Smith,
Shreveport, La., for defendants.

BEN C. DAWKINS, Jr., Chief Judge.

### RULING ON MOTION FOR REHEARING

After timely removal from the state court, we sustained a motion by defendants for entry of judgment. Hilltop Bowl, Inc. v. United States Fid. & Guar. Co., 248 F.Supp. 572 (W.D.La.1966). We concluded there that the bowling lanes installed by the lessee remained its property and were thus covered by the lessee's insurance policy on the "contents" rather than the lessor's policy on the "building." Since the lessee's policy was subject to a co-insurance clause,[1] lessee was required to co-insure 28.986 per cent of the damage to the contents because the actual cash value of the contents exceeded the applicable insurance.

Plaintiffs now move for new trial and/or rehearing, alleging (1) that dis-

---

1. Under the terms of the policy, Hilltop Bowl, Inc. (the lessee) was required to maintain insurance on the contents equal to 100% of the actual cash value thereof, and "failing so to do, the insured shall be an insurer to the extent of such deficit and in that event shall bear his, her or their proportion of any loss."

covery of new evidence shows an intention to treat the bowling lanes as part of the building under the insurance policies, (2) that the court erred in assessing half of the appraisal costs to plaintiffs, and (3) that the controversy should be resolved by reference to the terms of the insurance policies, with due regard to the intention of the parties and to the Louisiana rule that in cases of ambiguity, policies are to be strictly construed against the insurer.[2] Although it is our conclusion that plaintiffs' motion must be denied, we deem it advisable to expound upon our original opinion in order to elucidate its resolution of the issues.

Hilltop Realty was the owner and lessor of a building operated as a bowling alley by its lessee, Hilltop Bowl. Although similar in name, these two corporations were separate and distinct legal entities with independent corporate purposes. Both lessor and lessee carried fire insurance policies when the building and its contents were partially destroyed by fire January 19, 1964. The lessor had insured the building for $120,000, and the lessee had insured the contents for $115,000.

Pursuant to the terms of the insurance contracts, each party appointed an appraiser, and the Court selected an umpire. After deliberation, it was agreed that the actual cash value of the building and its contents was $226,880.86, well within the combined coverage of the policies of lessor and lessee. However, since the lessee's policy was subject to a co-insurance provision, a dispute arose as to whether the bowling lanes were insured under lessor's or lessee's policy. If the bowling lanes were considered contents and thus covered under lessee's policy, the actual cash value of the contents would exceed the applicable insurance, requiring the lessee to co-insure 28.986 per cent of the damage to the contents.[3]

■ Initially, perhaps we should dispose of the question regarding appraisal costs. Plaintiffs assert that R.S. 22:-629,[4] as interpreted in Macaluso v. Watson, 171 So.2d 755 (La.App. 4th Cir. 1965), is support for the contention that Louisiana fire insurance policies cannot require the insured to submit to an appraisal procedure. In *Macaluso*, it was held that a provision in an insurance policy requiring arbitration violated R.S. 22:629 since it deprived Louisiana courts of jurisdiction of an action against an insurer.[5] Although we have no quarrel with *Macaluso* and its applicability to required *arbitration* in uninsured motorist cases, it has no pertinence here. The appraisal procedure in these insurance policies was lifted verbatim from the appraisal provisions contained in the standard fire insurance policy of Louisiana.[6] Unlike the policies under consideration

---

2. Finn v. Employers Liab. Assur. Corp., 141 So.2d 852, 858 (La.App.2d Cir. 1962).

3. The values agreed upon by the appraisers and umpire are as follows:
   (1) Building ........... $ 64,940.50
   (2) Contents .......... 103,665.81
   (3) Bowling lanes ...... 58,274.55
   TOTAL ........... $226,880.86
   Thus if the contents included the bowling lanes, their actual cash value would be $161,940.36, resulting in lessee being under-insured by $46,940.36 and subject to the co-insurance clause.

4. La. R.S. 22:629 (1950), as amended, provides in part:
   "A. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, shall contain any condition, stipulation, or agreement * * *
   (2) Depriving the courts of this state of the jurisdiction of action against the insurer * * *"

5. Accord, Spillman v. United States Fid. & Guar. Co., 179 So.2d 454 (La.App.3d Cir. 1965).

6. La. R.S. 22:691 (1950), as amended, provides in part:
   "A. The printed form of a policy of fire insurance, as set forth in Subsection F shall be known and designated as the 'standard fire insurance policy of the State of Louisiana.'
   B. No policy or contract of fire insurance shall be made, issued or delivered by any insurer, or by any agent or representative thereof, on any property in this state, unless it shall conform as to

in *Macaluso*, these policies include no requirement of arbitration which might affect the jurisdiction of Louisiana courts. Thus plaintiffs' contention that they are not bound by the policy's provision requiring a share of the umpire's fee is without merit.

Plaintiffs allege that our original opinion excessively emphasized Louisiana property law and failed to properly appreciate the intention of the parties as reflected by the terms of the insurance policies. Additionally, plaintiffs seek to invoke the Louisiana rule providing for strict construction against insurers in cases where ambiguity exists in the policy. As we shall demonstrate, Louisiana property law, the agreements between the interested parties and the terms of the insurance policies clearly reveal that the intention of the parties was to treat the bowling lanes as contents rather than as part of the building.

The record indicates that these two separate and distinct legal entities entered into a lease in which Hilltop Bowl, as lessee, was to pay substantial rental to operate a bowling alley in the building owned by Hilltop Realty. The lessee, at its own expense, installed the bowling lanes in the building, along with automatic pinsetters and miscellaneous bowling equipment. Quite naturally, lessee was unable to transform lessor's building into a modern bowling alley without the procurement of extensive credit. Thus after installing twelve bowling lanes and equipment in the building, Buckelew's Hardware Co. and Brunswick Automatic Pinsetters, Inc. were by no stretch of the imagination insubstantial creditors.

Brunswick, certainly not without experience, was interested in protecting its investment. In addition to its recorded chattel mortgage, this influential creditor persuaded other potentially priming creditors to waive any priority they may have been able to assert with reference to the bowling lanes and equipment. Thus in an agreement styled a "Real Estate Consent," the bowling lanes and equipment were stipulated to "at all times be considered personal property and not attached to the real estate." In this agreement, Hilltop Bowl, Inc., Hilltop Realty, Inc., Commercial National Bank and the First National Bank in Mansfield waived any "lien, claim or interest" which they may have or ever acquire as to the bowling lanes and equipment. To show the extent of Brunswick's influence over both the lessor and lessee, it was not only named loss payee in lessee's insurance policy on the contents, but also in lessor's policy covering the building.

In our original opinion, we concluded that the bowling lanes would not be considered immovables by nature or destination under Louisiana property law.[7] Under the law, there seems to be little doubt that the lessee remained own-

---

all provisions, stipulations, agreements and conditions, with such form of policy. * * *

Appraisal—In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then on request of the insured or this Company such umpire shall be selected by a judge of a court of record in the state in which the property covered is located * * *

*Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally * * *"* (Emphasis added.)

7. Hilltop Bowl, Inc. v. United States Fid. & Guar. Co., 248 F.Supp. 572, at 575 (W.D.La.1966). In summary, we concluded that the bowling lanes were not immovable by nature under article 464 since they would not be classified as lands, buildings or other constructions. Even though those attachments listed in article 467 are merely illustrative, it is essential that the *owner* of the building attach them for the use or convenience of the building in order for them to be considered immovables by nature. Ad-

er of the bowling lanes and could remove them subject to the limitation that the building be left in the same condition in which it was received.[8] Once we had determined that ownership of the bowling lanes had been retained by lessee, it was then necessary to examine the coverage clauses of each insurance policy.

■ Lessor's policy on the building contained the following clause:

"A. Building coverage — When a building is insured hereunder, it shall mean *the basic structure,* its additions and structures directly and immediately attached thereto, all building service installations *made a permanent part of the building,* and detachable fittings of the *building* * * * *landlord's furnishings* pertaining to the maintenance and protection of the building (*but not to any occupancy*) * * * *Nothing in the foregoing shall be construed to extend this coverage to property described under Sections B and C* * * *" (Emphasis added.)

Since the coverage clause specifically exempted from coverage property described in Section B and that section is applicable only when "contents" are the subject of insurance, it is important to note that Section B provided:

"B. Furniture, fixture and equipment coverage—When this policy insures furniture, fixtures and equipment it shall cover all furnishings, fixtures, machinery, tools, supplies, equipment and other similar *personal property pertaining to the insured's business or occupancy when contained in (or on) the building described* * * *" (Emphasis added.)

After an examination of these clauses, it seems clear that the bowling lanes could only be covered under the "contents" policy since they were owned by the lessee and in use pertaining to his occupancy of lessor's building.

■■ To the contention that we relied too heavily on Louisiana property law and the "Real Estate Consent" agreement, we can only reiterate a fundamental rule of insurance law. Insurance on property is not a wagering contract but a contract of indemnity, and if one has no insurable interest in property, he sustains no loss by its destruction.[9] Answering the question of ownership of the bowling lanes by reference to Louisiana property law and the "Real Estate Consent" agreement was necessary to establish intention of the parties. Lessee, as owner of the bowling lanes, unquestionably had the requisite insurable interest required by R.S. 22:614.[10] On the other hand, the lessor had very little insurable interest in the bowling lanes. Not only were the bowling lanes to re-

---

ditionally, in order for things to become immovable by destination under article 468, unity of ownership is a necessity. Since the record showed that it was not uncommon to remove and sell bowling lanes apart from the building and that the lanes were not attached with plaster or mortar, article 469 was inapplicable. Thus it was our conclusion that these improvements and additions remained the lessee's movable property, and the lessee retained a continuing right of removal under article 2726. Of course, in reaching these conclusions, we not only applied Louisiana property law but considered recorded agreements by the parties along with the terms of the insurance policies.

8. La.Civil Code art. 2726 (1870).

9. 4 Appleman, Insurance Law and Practice § 2121 (1941). See e.g., Rube v. Pacific Ins. Co., 131 So.2d 240 (La.App. 1st Cir. 1961); Davis-Wood Lumber Co. v. Insurance Co. of N. America, 154 So. 760 (La.App. 1st Cir. 1934).

10. La. R.S. 22:614 (1950), as amended, provides:
"A. No contract of insurance on property or of any interest therein or arising therefrom shall be enforceable except for the benefit of persons having an insurable interest in the things insured.
"B. 'Insurable interest' as used in this Section means any lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage."

main the property of the lessee, but by execution of the "Real Estate Consent," lessor had waived any priority his lessor's privilege may have had over the chattel mortgage held by Brunswick.[11]

Admittedly, lessor has some insurable interest in the property of its lessee despite relinquishment of a portion of his priority rights.[12] However, since the valued policy law of Louisiana is inapplicable to this case because the bowling lanes were neither immovable by nature or destination,[13] there is no question that the insurer could have questioned the extent of the lessor's insurable interest.[14] Since lessor would have been

limited in its recovery to its insurable interest, which would certainly have been small, we fail to see any basis for the belief that the parties intended for the bowling lanes to be covered by lessor's insurance policy on the building.

As an additional allegation in support of their motion for rehearing, plaintiffs claim discovery of new evidence conclusively demonstrates the intention of the parties was to insure the bowling lanes under the lessor's policy. The new evidence consists of correspondence between interested insurance agencies, including a worksheet listing an item identified as "alley beds" under the heading "Build-

11. The privilege afforded the lessor on the movable effects of his lessee by article 2705 arises upon the concurrence of the confection of a particular lease and the existence of the property on the leased premises. See, e.g., Central Sav. Bank & Trust Co. v. Oilfield Supply & Scrap Material, 202 La. 787, 12 So.2d 819 (1943); Smith v. Bratsos, 202 La. 493, 12 So.2d 245 (1942); White Co. v. Hammond Stage Lines, 180 La. 962, 158 So. 353 (1934); Comegys v. Shreveport Kandy Kitchen, 162 La. 103, 110 So. 104, 52 A.L.R. 931 (1926); Youree v. Limerick, 157 La. 39, 101 So. 864, 37 A.L.R. 394 (1924); Universal C.I.T. Credit Corp. v. Parker, 117 So.2d 660 (La.App. 2d Cir. 1960); Spremich v. Somerfield, 166 So. 630 (La.App.Orl. Cir. 1936); Thigpen v. Wall Printing Corp., 145 So. 714 (La.App.2d Cir. 1933); Kidd for Use and Benefit of Kidd v. Terrel, 145 So. 23 (La.App.2d Cir. 1932); Williams v. Federal Machine Shop, 8 La.App. 281 (Orl.1928); Bernhardt v. Sandel, 3 La. App. 139 (2d Cir. 1925), reversing on second rehearing Bernhardt v. Sandel, 4 La.App. 648 (2d Cir. 1923); Murov v. Meyer, 2 La.App. 756 (2d Cir. 1925).

By virtue of the existence of his lessor's privilege, lessor definitely had an insurable interest in the property of the lessee on the leased premises. 4 Appleman, Insurance Law and Practice § 2191 (1941).

12. Although lessor had waived his priority over some creditors, its privilege remained in existence, giving him economic interest in the preservation of the bowling lanes. It has been noted that a general creditor has no insurable interest in the property of his debtor. Rube v. Pacific Ins. Co., 131 So.2d 240 (La.App. 1st Cir. 1961).

13. Louisiana's valued policy law does not apply to movable property. Reliance Ins. Co. v. Orleans Parish School Board, 322 F.2d 803 (5 Cir. 1963), cert. denied, 377 U.S. 916, 84 S.Ct. 1180, 12 L.Ed.2d 186.

14. At the time the instant case arose, it had been held that the Louisiana valued policy law (R.S. 22:695) precluded the insurer from contesting not only *the value* of the insured property, but also *the extent of the insured's insurable interest* in that property. See, e. g., Roberts v. Houston Fire & Cas. Co., 168 So. 2d 457 (La.App.3d Cir. 1964); Southern Produce Co. v. American Ins. Co., 166 So.2d 59 (La.App.4th Cir. 1964), cert. denied, 246 La. 863, 167 So.2d 675; Rigdon v. Marquette Cas. Co., 163 So.2d 442 (La.App.2d Cir. 1964), cert. denied, 246 La. 578, 165 So.2d 480; Welch v. New York Underwriters Ins. Co., 145 So.2d 376 (La.App.3d Cir. 1962); The Forge, Inc. v. Peerless Cas. Co., 131 So. 2d 838 (La.App.2d Cir. 1961); Shore v. Northwestern Underwriters of Citizens Ins. Co., 208 F.Supp. 461 (W.D.La.1962).

Since an amendment to R.S. 22:695 in 1964 provided that "nothing herein shall be construed as precluding the insurer from questioning or contesting the insurable interest of the insured," it has been said that under the Louisiana valued policy law as amended by Act No. 464, § 2 of 1964, the insurer can now contest *the extent of the insured's insurable interest.* Roberts v. Houston Fire & Cas. Co., 168 So.2d 457, at 460 (La.App.3d Cir. 1964); The Work of the Louisiana Appellate Courts for the 1963–1964 Term —Insurance, 25 La.L.Rev. 381, at 386 (1965).

ing" rather than "Contents." In view of our conclusions based on ownership, insurable interest and other indications of the intention of the parties, the discovery of this new evidence is unpersuasive.

Thus it is our conclusion that plaintiffs' motion for new trial and/or rehearing must be denied. For the reasons stated here and in our original opinion, judgment in accordance with the motion of defendant shall be entered upon presentation of an appropriate decree.