728 So.2d 974 (1999)
Bobby G. WRIGHT, et al., Plaintiff-appellee,
v.
ASSURANCE COMPANY OF AMERICA, Defendant-appellant.
No. 31,578-CA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1999.
Rehearing Denied March 25, 1999.
John D. Collinsworth, Shreveport, Counsel for plaintiff-appellee Bobby G. Wright.
John A. Keller, Covington, Counsel for defendant-appellant Assurance Company of America.
Before WILLIAMS, CARAWAY and KOSTELKA, JJ.
CARAWAY, J.
Following a sheriff's sale of their home and a fire which destroyed the residence twelve days later, the plaintiffs brought this action for recovery of proceeds from a homeowner's insurance policy. The trial court held that the insurance company owed plaintiffs $78,095.49, representing the difference between the face value of the policy minus the portion paid to the mortgagee beneficiary under the policy. From this judgment, the insurance company appeals and we reverse the judgment of the trial court for the reasons set forth herein.

Facts
Bobby and Josie Wright purchased a home located at 1115 Baker Street in Springhill, Louisiana in June of 1979. At that time a mortgage was placed on the property which was later sold to Federal Home Loan Mortgage Corporation ("Federal"). Additionally, in 1984, a second mortgage was placed on the property by the Wrights in favor of Citizens Bank and Trust ("Citizens").
In 1989, Assurance Company of America ("Assurance") issued a policy of homeowner's insurance to the Wrights providing property and fire loss coverage. The policy was renewed each year through 1994, with higher limits each year in order to maintain replacement cost coverage. In 1994, the policy limits were raised for the final time to $176,204. Also, by 1994, Citizens was listed as a mortgage loan beneficiary under the Assurance policy in addition to the first mortgage holder.
In June 1994, Federal foreclosed on the property by executory proceedings against the Wrights. As a result of the foreclosure, on November 2, 1994, the subject property was sold by the sheriff's office at public auction to Citizens, the second mortgage holder, for a sum of $70,000. However, the *975 sheriff did not require the immediate payment of the bid price by Citizens at the sale.
Two days after the sale, on November 4, 1994, John D. Hargroder, President and CEO of Citizens, forwarded correspondence to the sheriff's department enclosing a check in the amount of $70,020, representing payment of the November 2, 1994 bid and a recording fee for the deed. In his correspondence, Hargroder advised the sheriff's department that a dispute had arisen between Citizens and Federal regarding the payoff amount of Federal's lien. Hargroder's letter asked the sheriff "to withhold payment [to Federal] until the amount of their cost has been verified" and he further advised that he was "requesting a hearing or whatever legal recourse we have in resolving the matter." Hargroder's letter did not state that Citizens' payment of the $70,020 check should be withheld from deposit by the sheriff.
With these instructions and with its routine workload, the sheriff's department did not immediately proceed to finish processing the sheriff's sale, but rather held Citizens' check which was not deposited until after the November 14, 1994 fire which destroyed the home. In addition, neither the proces verbal nor the deed was prepared until after the fire loss when the sheriff's office received another letter from Citizens' attorney confirming that the dispute regarding the lien amounts had been resolved. The deed to Citizens was recorded on November 17, 1994, and the proces verbal shows that at that time $15,288.93 was paid back to Citizens following payment of the costs of the sale and Federal's claim.
The Wrights, after being advised by Citizens to vacate the property, left the premises on November 14, leaving only a pool table, piano, and compactor at the residence. An agreement for the sale of those items had been reached between the Wrights and a new purchaser whom Citizens had obtained to buy the home. The cause of the fire, which occurred on the evening of November 14 when the property was unoccupied, was not shown at trial.
Following the loss, Assurance paid the Wrights the sum of $3,453.50 under the contents coverage of their policy for their items left on the premises. Assurance, nevertheless, refused to make payment under the dwelling coverage on the grounds that the Wrights did not have an insurable interest in the home following the sheriff's sale. Assurance also paid Citizens the sum of $98,108.51 as mortgagee under the policy.
The Wrights then filed suit against Assurance seeking payment of the balance due under the dwelling coverage of the policy after payment to the mortgagee. Following trial, the court rendered judgment in favor of the Wrights in the amount of $78,095.49, the amount remaining under the dwelling coverage after payment to Citizens. Assurance appeals re-urging the Wrights' lack of an insurable interest in the property following the sheriff's sale.

Discussion
La. R.S. 22:614 provides:
A. No contract of insurance on property or of any interest therein or arising therefrom shall be enforceable except for the benefit of persons having an insurable interest in the things insured.
B. "Insurable interest" as used in this Section means any lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage.
Discussing this provision of the insurance code, the court in Rube v. Pacific Insurance Co. of New York, 131 So.2d 240, 243 (La.App. 1st Cir.1961) stated:
`Insurable interest' as thus defined by our state legislature is consistent with the universally recognized rule to the effect a policy of insurance on property is predominately a contract of indemnity the purpose of which is to protect the assured against any loss he may sustain by virtue of its loss, damage or destruction. The great weight of authority further recognizes and holds that an interest in the property protected is essential to the existence of a valid insuring agreement and additionally serves to differentiate an enforceable indemnity agreement from a wagering pact which latter transaction is invalid and unenforceable for reasons obviously prompted *976 by public policy and good morals. It is also generally recognized and held the interest of the insured sought to be protected must have for its object the obviation of pecuniary or financial loss to or liability of the assured which would otherwise result from damage to or destruction of the insured property. If the loss or damage to the insured property does not expose the insured to either direct, immediate or potential loss or liability, the insured is without insurable interest therein.
In Brown v. State Farm Fire & Casualty Company, 363 So.2d 967 (La.App. 3d Cir. 1978), the court held under similar circumstances that the former owner/insured who had lost her property at a sheriff's sale retained no insurable interest in the home at the time of a fire that occurred approximately one month following the sale. The Wrights argued and the trial court ruled that, unlike the sheriff's sale in Brown, the Wrights retained an insurable interest in their home in this instance because the sale to Citizens had not been completed by the date of the fire. On that date, a sheriff's deed had not been executed, Citizens' dispute with Federal had not been settled, and payment of the sales price had allegedly not been made. Whether these circumstances mean that the Wrights retained "any lawful and substantial economic interest" in the preservation of the home must be answered from a review of the law governing judicial sales.
At the time of this 1994 judicial sale, the Civil Code articles pertaining to sales by public auction provided:
Former La. C.C. art. 2617 (now La. R.S. 9:3167) "Judicial sales are subject to the rules laid down above for public sales in general, in all such things as are not contrary to the formalities expressly prescribed for such sales, and with the modifications contained hereafter."
Former La. C.C. art. 2607 (now La. R.S. 9:3157) "When the highest price offered has been cried long enough to make it probable that no higher will be offered, he who has made the offer is publicly declared to be the purchaser, and the thing sold is adjudicated to him."
Former La. C.C. art. 2608 (now La. R.S. 9:3158) "This adjudication is the completion of the sale; the purchaser becomes the owner of the article adjudged, and the contract is, from that time, subjected to the same rules which govern the ordinary contract of sale."
Additionally, two articles of the Code of Civil Procedure which specifically address an adjudication at the time of a judicial sale under a writ of fieri facias, provide as follows:
La. C.C.P. art. 2371 "The adjudication transfers to the purchaser all the rights and claims of the judgment debtor as completely as if the judgment debtor had sold the property."
La. C.C.P. art. 2342 "Within fifteen days after the adjudication, the sheriff shall pass an act of sale to the purchaser, in the manner and form provided by law.
The act of sale adds nothing to the force and effect of the adjudication, but is only intended to afford proof of it."
As an additional consideration for this case, under the provisions of La. R.S. 13:4360, the seizing creditor may take action in the event of non-payment by the highest bidder at the sheriff's sale which can result in a second sale at the risk and for the account of the delinquent first bidder. If such second sale becomes necessary because of non-payment, the results are as if the first adjudication had never been made. See, Roussell v. Hughes, 159 La. 864, 106 So. 332 (1925); Capital Building & Loan Association v. Northern Insurance Co. of New York, 166 La. 179, 116 So. 843 (La.1928); and analogous principle in La. R.S. 9:3161 for non-judicial sales by auction. Further, the cases interpreting La. R.S. 13:4360 recognize that only the seizing creditor can direct the sheriff to re-offer the sale and that short delays caused by the sheriff's receipt of a check instead of cash and the clearance of the check do not destroy the effect of the adjudication as set forth under La. C.C.P. art. 2371. Farm Credit Bank of Texas v. Lemoine, 94-776 (La.App. 3d Cir.12/7/94), 649 So.2d 749; General Electric Credit Corp. v. Tardo, 304 So.2d 89 (La.App. 1st Cir.1974).
*977 When we examine the actions of Citizens regarding the sheriff's sale adjudication in this instance, we find that payment of the bid price was made prior to the fire. Federal, the seizing creditor, never raised an issue asserting that Citizens' payment by check was untimely or conditional so that a second sale and adjudication were necessary. Despite Citizens' contentions regarding the dollar amount of Federal's superior-ranked claim, Citizens did not instruct the sheriff to withhold depositing its check which it tendered in full payment of its bid prior to the fire. The sheriff's representative who testified at trial further indicated that despite her delay in depositing Citizens' check, she would not have returned the check to Citizens. Finally, Citizens' informal dispute regarding the additional costs of the foreclosure process added by Federal to its claim against the property did not pertain to Citizens' status as adjudicatee. In its additional status as an inferior lienholder, Citizens would have been required under La. C.C.P. art. 1092 to intervene in Federal's foreclosure proceedings prior to the distribution by the sheriff of the proceeds of the sale to contest the amount of the distribution to Federal and to thereby increase the amount of the sale proceeds which would be ultimately returned to Citizens as the second mortgage claimant.
Under these circumstances and in light of the above principles governing judicial sales, Citizens' payment and the transfer of property were complete prior to the fire "as if the judgment debtor had sold the property." La. C.C.P. art. 2371. Moreover, when we examine the interests of the Wrights, who had not contested the foreclosure proceeding and had relinquished possession of the property, there was no economic interest remaining in them for the preservation of the insured property.
Finally, the fact of Assurance's payment to Citizens under the mortgagee clause of the policy has no relevance to the issue of the Wrights' continuing insurable interest under the policy. The mortgagee clause in the policy specifically addresses the possibility of a denial of the insured/owner's claim because of a change in ownership but states that such denial will not apply to a valid claim of the mortgagee. In any event, the enforceability of the policy by the Wrights must be measured under the dictates of La. R.S. 22:614 regardless of the interpretation of Citizens' beneficial rights and insurable interest under the policy.

Conclusion
For the reasons set forth herein, the judgment of the trial court is reversed and costs are assessed to the Wrights.
REVERSED.

APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, GASKINS, CARAWAY and KOSTELKA, JJ.
Rehearing denied.